Aldine Apartments, Inc., t/a Academy Apartments, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued September 12, 1978, before President Judge BOWMAN and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, DISALLE and MACPHAIL. Judges CRUMLISH, JR. and CRAIG did not participate.

*Robert R. Guzzardi,* with him, of counsel, *Frank E. Hahn, Barton A. Hertzbach,* and *Obermayer, Rebmann, Maxwell & Hippel,* for petitioner.

*Paul S. Roeder,* Deputy Attorney General, for respondent.

*Barton A. Hertzbach,* with him *Frank E. Hahn, Jr.,* and, of counsel, *Obermayer, Rebmann, Maxwell and Hippel,* for amicus curiae, Delaware Valley Apartment House Owners' Association.

OPINION BY JUDGE MACPHAIL, December 13, 1978:
The appellant, Aldine Apartments, Inc. (Aldine), is the owner and operator of an apartment complex

containing seventy (70) tenant-occupied residential units. From January 6, 1971, through July 7, 1976, Aldine paid $4,685.58 in sales tax on purchases of gas, fuel oil and electricity for use in operating the apartment complex. Pursuant to its leases, Aldine provided its tenants with electricity for lights and appliances and with gas to operate gas ranges. Aldine uses electricity to light common hallways and to power elevators, emergency lighting, a fire alarm system and water pumps. Aldine used fuel oil to provide steam heat to its tenants via a central heating system. Aldine's tenants made no payments to Aldine other than monthly rental payments which were not related to the amount of gas, heat and electricity used by the individual tenants. All electricity, gas and fuel oil used in operating the apartment complex were paid for by Aldine.

On September 16, 1976, Aldine filed a petition for a refund of sales taxes paid by them over the period in question. The petition was denied by the Sales Tax Board and that decision was affirmed by the Board of Finance and Revenue (Board). This appeal followed.

Aldine asks that we reverse the order of the Board contending that (1) the sales to Aldine of electricity and gas for residential use of its tenants do not constitute "sales at retail of tangible personal property" for sales tax purposes and (2) exclusion from the tax of sales of gas, fuel oil and electricity purchased directly by the user thereof solely for his own residential use violates the uniformity clause of the Pennsylvania Constitution and the equal protection clause of the Fourteenth Amendment of the United States Constitution by discriminating against landlords who purchase gas, oil and electricity for the residential use of their tenants.

Section 202(a) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7201(a), provides:

There is hereby imposed upon each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth a tax of six percent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to Commonwealth as herein provided.

Section 201(m) of the Code, 72 P.S. §7201(m), defines "tangible personal property" as used in clause (a) as follows:

'Tangible personal property.' Corporeal personal property including, but not limited to, goods, wares, merchandise, steam and natural and manufactured and bottled gas for non-residential use, electricity for non-residential use, intrastate telephone and telegraph service for non-residential use, spirituous or vinous liquor and malt or brewed beverages and soft drinks; but the term shall not include household supplies purchased at retail establishments for residential consumption, including but not limited to, soaps, detergents, cleaning and polishing preparations, paper goods, household wrapping supplies and items of similar nature, or sanitary napkins, tampons or similar items used for feminine hygiene. Nor shall said term include steam, natural and manufactured and bottled gas, fuel oil, electricity or intrastate telephone or telegraph service when purchased directly by the user thereof solely for his own residential use.

Prior to the last amendment of clause (m), the last sentence thereof read as follows:

> Nor shall said term include steam, natural and manufactured and bottled gas, fuel oil, electricity or intrastate telephone or telegraph service *when purchased solely for residential use*. (Emphasis added.)

It seems obvious to us that the legislative intent manifested in the amendatory language was to foreclose the very position taken by Aldine in the matter now before us. The Legislature has granted an exemption to those persons who purchased gas, fuel oil and electricity themselves for their own residential use. By no stretch of the imagination can we conclude that Aldine purchased electricity and fuel oil for *its* own residential use. It is beyond dispute that the purchases made by Aldine were for the residential use of its tenants.

Aldine also contends that the first sentence of Section 201(m), by explicitly including gas and electricity for non-residential use, implicitly excludes all gas and electricity for residential use from the definition of "tangible personal property." However, the statutory language "including, but not limited to" immediately preceding the descriptive use of gas and electricity is a clear indication that the Legislature intended to exclude nothing, implicitly or otherwise, by the language which follows those words. For exclusionary provisions we must look to the remainder of the language of Section 201(m). There we see that "tangible personal property" does *not* include gas and electricity purchased directly by the user thereof solely for his own residential use. Implicit in *that* language is the fact that gas and electricity used for all other purposes is "tangible personal property" for the purpose of the imposition of the tax. Any other construction of that language would render it totally without meaning.

Also without merit is Aldine's contention that its purchases of gas, oil and electricity were not subject to tax because they were purchases for resale as that term is defined in clause (i) of Section 201 of the Code, 72 P.S. §7201(i).[1] The pertinent language in the lease agreements between Aldine and its tenants with respect to utilities reads as follows:

All utilities included in rent except electricity for any air conditioning units installed by tenant. This will be billed at an extra charge of $60 per year payable $5.00 per month per unit, starting month unit is installed.

---

[1] (i) 'Resale.'

(1) Any transfer of ownership, custody or possession of tangible personal property for a consideration, including the grant of a license to use or consume and transactions where the possession of such property is transferred but where the transferor retains title only as security for payment of the selling price whether such transaction be designated as bailment lease, conditional sale or otherwise.

(2) The physical incorporation of personal property as an ingredient or constituent into other personal property, which is to be sold in the regular course of business or the performance of those services described in subclauses (2), (3) and (4) of clause (k) of this section upon personal property which is to be sold in the regular course of business or where the person incorporating such property has undertaken at the time of purchase to cause it to be transported in interstate commerce to a destination outside this Commonwealth.

The term 'resale' shall also include personal property purchased or having a situs within this Commonwealth solely for the purpose of being processed, fabricated or manufactured into, attached to or incorporated into personal property and thereafter transported outside this Commonwealth for use exclusively outside this Commonwealth.

The term 'resale' shall not include any sale of 'malt or brewed beverages' by a 'retail dispenser,' or any sale of 'liquor' or 'malt or brewed beverages' by a person holding a 'retail liquor license' within the meaning of the 'Liquor Code.'

The plain meaning of that language is that Aldine took the matter of utilities into account in calculating the rent it would charge its tenants and that Aldine was willing to absorb the utility expense in that rental charge. By so providing, they have effectively removed those items from the category of a resale as defined by clause (i). The only possible question in reaching that conclusion is with respect to the electricity for the air conditioning units. First, it will be observed that the additional charge is not based upon the amount of electricity used by the tenant, but is a flat rate "extra charge" to be added to the monthly rental payments and will be charged every month whether or not electricity is consumed by the tenant's air conditioner. Next, we look at the definition of "resale" in clause (i). Subclause (1) is limited to the transfer of tangible personal property. As we noted, *supra*, that term includes natural, manufactured and bottled gas as well as electricity for *non*-residential uses and specifically *excludes* gas, fuel oil and electricity purchased by the user for his own residential use. Since here the electricity for the air conditioners is for residential purposes, we hold that it is not tangible personal property purchased by Aldine for resale as that term is defined in subclause (1) and of clause (i). Subclause (2) is limited to the incorporation of personal property as an ingredient or constituent into other personal property and is clearly irrelevant to the issue we are now considering. Finally, on this point, in the stipulation of facts filed as a part of the record in this case, Aldine admits that it did not furnish an exemption certificate to any of the suppliers of utility services as it would be obliged to do if it were re-selling the utilities to its tenants.

With respect to the constitutional issue, Aldine contends that Section 201(m) violates the uniformity and equal protection clauses of the Pennsylvania and Unit-

ed States Constitutions by discriminating between those who purchase gas, oil and electricity for the residential use of others and those who purchase those items for their own residential use. With respect to this argument we were favored by a brief from amicus curiae, namely, Delaware Valley Apartment House Owners' Association.

So far as reasonableness of classification in tax matters is concerned, the uniformity and equal protection clauses stand in pari materia. *Commonwealth v. Budd Co.*, 379 Pa. 159, 108 A.2d 563 (1954), *appeal dismissed*, 349 U.S. 935 (1955). Those clauses do not impose an iron-clad rule of equality so as to inhibit flexible and reasonable schemes of taxation. Only substantial uniformity and approximate equality are required. *Commonwealth v. Rohm and Haas Co.*, 28 Pa. Commonwealth Ct. 430, 368 A.2d 909 (1977). Classification for the purpose of taxation may be based on the existence of differences recognized in the business world, on the want of adaptability of the subjects to the same method of taxation, upon the impracticability of applying to them the same methods so as to produce justice and reasonably uniform results, or upon well-grounded considerations of public policy. *Jones and Laughlin Tax Assessment Case*, 405 Pa. 421, 175 A.2d 856 (1961).

The burden of showing that a classification employed by the Legislature clearly, palpably, and plainly violates a constitutional provision is on the party attacking the classification. *Commonwealth v. Life Assurance Co. of Pennsylvania*, 419 Pa. 370, 214 A.2d 209 (1965). Here, the burden is upon Aldine to show that the distinctive treatment afforded apartment owners who separately meter their apartments or tenants who pay for their utilities directly is unreasonable. In our judgment, Aldine has not met that burden. First, the difference between a tenant purchas-

ing gas, oil and electricity in order to provide himself with adequate food and shelter and a landlord purchasing those items as part of a commercial enterprise is a genuine distinction recognized in the business world. Second, it is impracticable to police apartment buildings to determine whether any of the gas, oil and electricity which is ostensibly being used for residential purposes by tenants is in fact being used for a non-residential purpose by the landlord. Finally, the classification promotes a now well-grounded public policy of energy conservation by inducing landlords to bill their tenants according to their actual energy use, thus discouraging those tenants from wasting energy. In short, we hold that there is a reasonable basis for the classification created by the provisions of Section 201(m).

For the foregoing reasons we will affirm the decision of the Board of Finance and Revenue.

ORDER

AND Now, this 13th day of December, 1978, the order of the Board of Finance and Revenue, dated June 29, 1977, is affirmed.