Eva Marie Weissenberger, t/a Valley Forge Apartments, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued June 3, 1980, before President Judge Crumlish and Judges Mencer, Rogers, Blatt, Craig, MacPhail and Williams, Jr. Judge MacPhail did not participate.

178

*Thomas J. Tumola,* with him *George W. Braun,* of *Clark, Ladner, Fortenbaugh & Young,* for petitioner.

*Paul S. Roeder,* Deputy Attorney General, for respondent.

OPINION BY JUDGE BLATT, October 3, 1980:

The petitioner, Eva Marie Weissenberger, is the owner of an apartment complex containing 447 residential units. From April 23, 1975 through December 30, 1975, she paid $7,117.58 in sales tax on purchases of electricity for the complex from the Philadelphia Electric Company. She filed a petition for a refund of this tax in January of 1978 which was denied by the Sales Tax Board. That decision was sustained by the Board of Finance and Revenue and this appeal followed.

Upon leasing one of the petitioner's apartments during the period in question, each tenant was required to enter into a utility agreement with the petitioner under which the petitioner promised to purchase electric service for the tenant concerned. Under these agreements, each tenant was charged an amount for electrical service based solely on the square footage of the apartment rented. The amount to be charged per square foot was apparently determined by subtracting from the petitioner's so-called "test pe-

riod'' electrical bill an amount approximately equal to the electricity used for the common areas of the apartment, and then by dividing the remainder (presumably representing the amount used by the tenants) by the total square footage of the residential units. The parties have stipulated that the petitioner's electrical consumption did not change between the time of the ''test period'' and the period of contested taxation.

Section 202(a) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7202(a), imposes a sales tax of six percent upon ''each separate sale at retail of tangible personal property.'' Section 201(m) of the Code, 72 P.S. §7201 (m), defines ''tangible personal property,'' in relevant part, as follows:

> Corporeal personal property including . . . electricity for non-residential use . . . but the term shall not include house hold supplies purchased at retail establishments for residential consumption. . . . Nor shall said term include steam, natural and manufactured and bottled gas, fuel oil, *electricity* or intrastate telephone or telegraph service *when purchased directly by the user thereof solely for his own residential use.* (Emphasis added.)

The issue, therefore, is whether or not the electricity was purchased by the petitioner for her own residential use, and it is controlled by our decision in *Aldine Apartments, Inc. v. Commonwealth of Pennsylvania*, 39 Pa. Commonwealth Ct. 204, 395 A.2d 299 (1978). There we held that, where a landlord purchases electricity from a utility and supplies it to his tenants according to a flat monthly rate, the electricity is not for the landlord's residential use and is subject to the sales tax as a retail sale of tangible personal property.

The petitioner contends that this case is distinguishable from *Aldine, supra,* because her purchases of electricity were exempt from the tax as "purchases for resale" as that term is defined in Section 201(i) of the Code, 72 P.S. §7201(i).[1] This argument fails, however, because the alleged resale to the tenants was based on a flat fee and not on the tenants' actual individual use of electricity. Indeed, the petitioner stipulated that, if each apartment in the complex had been individually metered and charged for electricity according to actual usage, it would have been difficult to rent the corner apartments and those on the top floor because of their outside exposure and resultant heat loss. She also stipulated that the purpose of the supplemental utility agreement was to spread the total cost of electricity uniformly among the tenants according to the size of their apartments. Her scheme was obviously to purchase electricity measured in kilowatt-hours from Philadelphia Electric Company and to "resell" it to her tenants according to the number of square feet in their apartments. Clearly, this cannot amount to a "resale" under the Code because the price charged by the petitioner for electrical service does not accurately track the use of electricity by the tenants. *Aldine, supra.*

We also note that the petitioner did not furnish an exemption certificate to the Philadelphia Electric Company as would be required if she were reselling electricity to the tenants. *Aldine, supra.*

---

[1] Section 201(i) of the Code, 72 P.S. §7201(i) defines "purchases for resale" as:

> Any transfer of ownership, custody or possession of tangible personal property for a consideration, including the grant of a license to use or consume and transactions where the possession of such property is transferred but where the transferor retains title only as security for payment of the selling price whether such transaction be designated as bailment lease, conditioned sale or otherwise.

Finally, the taxpayer contends that Section 201(m) of the Code, 72 P.S. §201(m), violates the uniformity provisions of the Pennsylvania Constitution and the equal protection clause of the United States Constitution by discriminating against landlords who purchase electricity for the residential use of their tenants. These very contentions were rejected in *Aldine, supra,* where we held that the uniformity and equal protection clauses stand in pari materia and that only substantial uniformity and approximate equality are required. *See Commonwealth v. Rohm and Haas Co.,* 28 Pa. Commonwealth Ct. 430, 368 A.2d 909 (1977). Moreover, the Court in *Aldine, supra,* stated that practical economic distinctions between different groups of persons and the impracticalities of applying uniform taxation methods between them can justify different tax classifications. As we held in *Aldine, supra,* 39 Pa. Commonwealth Ct. at 211-12, 395 A.2d at 303:

> First, the difference between a tenant purchasing gas, oil and electricity in order to provide himself with adequate food and shelter and a landlord purchasing those items as part of a commercial enterprise is a genuine distinction recognized in the business world. Second, it is impracticable to police apartment buildings to determine whether any of the gas, oil and electricity which is ostensibly being used for residential purposes by tenants is in fact being used for a non-residential purpose by the landlord. Finally, the classification promotes a now well-grounded public policy of energy conservation. . . . In short, we hold that there is a reasonable basis for the classification created by the provisions of Section 201(m).

The petitioner attempts to avoid the conclusive precedential effect of *Aldine,˙ supra,* by contending that Section 201(m) of the Code, 72 P.S. §201(m), cre-

ates an impermissible distinction not between classes of landlords, but between those residential users who live in single homes and those who live in apartments where electricity is purchased by the landlord. We need not consider the merits of this argument, however, for the petitioner cannot claim standing to assert the alleged constitutional rights of her tenants. *See Harrisburg School District v. Harrisburg Education Association,* 32 Pa. Commonwealth Ct. 348, 379 A.2d 893 (1977).

## ORDER

AND Now, this 3rd day of October, 1980, the order of the Board of Finance and Revenue, dated June 22, 1978, is affirmed.

Judge WILLIAMS, JR. concurs in the result only.