## Summit House Condominium, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Argued April 3, 1984, before President Judge CRUMLISH, JR. and Judges ROGERS, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

W. *Robert Landis*, with him, *Gabriel N. Preston*, W. *Robert Landis Associates, P.C.*, for appellant.

*Paul S. Roeder*, Deputy Attorney General, with him, *LeRoy S. Zimmerman*, Attorney General, for appellee.

OPINION BY JUDGE DOYLE, August 2, 1984:

This petition for review by Summit House Condominium (Condominium) follows an order of the Pennsylvania Board of Finance and Revenue which sustained a decision of the Sales Tax Board of Review denying the Condominium a refund for sales tax paid on purchases of electricity from the Philadelphia Electric Company (PECO) between July 24, 1972 and April 30, 1975.

The stipulated facts indicate that during the period in question, electricity for the residential units and common areas of the Condominium was purchased in bulk from PECO by the Condominium Council and its management agent,[1] and the cost was apportioned among the individual unit owners according to each unit's size. At issue here is whether such a purchase arrangement qualifies for sales tax exemption under the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§7101-10004.

---

[1] The Condominium Council consists of five representatives elected by vote of the individual unit owners. During the developmental stages of the Condominium, the firm of Spackman Associates was retained to assist in the operation and management of the Condominium.

Section 202(a) of the Code provides:

There is hereby imposed upon each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth a tax of six per cent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided.

72 P.S. §7202(a). The Code defines "tangible personal property" as follows:

(m) "Tangible personal property." Corporeal personal property including, but not limited to, goods, wares, merchandise, steam and natural and manufactured and bottled gas. for non-residential use, electricity for non-residential use, intrastate telephone and telegraph service for non-residential use, spiritous or vinous liquor and malt or brewed beverages and soft drinks; but the term shall not include household supplies purchased at retail establishments for residential consumption. . . . Nor shall said term include steam, natural and manufactured and bottled gas, fuel oil, electricity or intrastate telephone or telegraph service when purchased directly by the user thereof solely for his own residential use.

72 P.S. §7201(m). Prior to amendment in August of 1971,[2] Section 201(m) read, in pertinent part:

Nor shall said term include steam, natural and manufactured and bottled gas, fuel oil, electricity or intrastate telephone or telegraph service when purchased solely for residential use.

_____

[2] Section 1 of the Act of August 31, 1971, P.L. 362. The amendment was made retroactive to March 4, 1971.

The Commonwealth argues that the alteration of the language in the definition evidences an intent by the legislature to include purchases like those in question here within the definition and make them subject to the sales tax. The Condominium argues that the language indicates only an intent to exclude landlord purchases from the definition's exemption and should not be read to deny exemption to purchases by groups of owners solely for their residential use.

That the language in the definition denies exemption to landlords is beyond dispute. *Aldine Apartments, Inc. v. Commonwealth,* 493 Pa. 480, 426 A.2d 1118 (1981) *affirming,* 39 Pa. Commonwealth Ct. 204, 395 A.2d 299 (1978); *Weissenberger v. Commonwealth,* 54 Pa. Commonwealth Ct. 177, 420 A.2d 768 (1980). In *Aldine,* the appellant landlord purchased electricity and included the cost of utilities in the rents charged to tenants, and argued that the ultimate use of the electricity purchased was residential and should therefore be exempt from the sales tax. The Supreme Court rejected the landlord's argument that he was simply a conduit for the purchase of electricity by his tenants, and found that his use, as purchaser, was commercial and therefore not exempt under the definition. The Court stated:

> The argument that the ultimate residential use sustains the right to exemption is defeated by the clear language of the Act. The legislature could not have been more explicit in section 201(m) in confining the residential use exception to residential use by the purchaser....
>
> Appellant seeks to place itself in the role of a mere conduit and suggests that factor is not deserving of any tax consequences. However, it is clear that the legislature intended to

distinguish between purchases by those who intended to use the utility for their own residential use and those who purchased the tangible personal property for a commercial purpose. The fact that appellant is in the business of supplying residences for hire does not make it any less a commercial venture.

493 Pa. at 483-84, 426 A.2d at 1120.

We do not read *Aldine* to hold that the exemption is denied when the ultimate user is not identical with the party directly billed for the purchase. Rather, the controlling factor which emerges from *Aldine* is that the use intended by the purchaser is a commercial and not a residential one. Such is not the case here. Unlike the landlord in *Aldine*, the Condominium Council and its management agent did not purchase the electricity for use by the individual unit owners as part of any business transaction with those owners. The relationship between the Condominium Council, the management agent and the individual unit owners is rooted in agency not in business. We perceive no commercial interest coloring the purchases by the Council or management agent as there is in purchases by a landlord. The use intended by the purchasers here was the same ultimate residential use intended by the individual unit owners.

We do not find it critical that the individual unit owners did not make individual direct purchases, nor that they shared the cost of the electricity purchased based on unit size rather than individual usage. The Code definition does not specify whether "purchased directly by the user thereof solely for his own use" refers to individual persons, households or, as here, groups of households acting together as a condominium. We are constrained, of course, to interpret the singular to include the plural. Section 1902 of

the Statutory Construction Act of 1972, 1 Pa. C. S. §1902. We must, therefore, apply the exemption in the Code definition to electricity purchases when purchased by *users* thereof solely for *their* own use. For all intents and purposes, the purchases in question here were made by the individual unit owners acting in concert, through authority delegated to the representative Council and management agent. Under the circumstances, the exemption should apply here.

In light of the distinction drawn in *Aldine,* we do not think the legislature intended otherwise. As noted above, the definition prior to amendment exempted all purchases of electricity for residential use. We believe the legislature amended the definition to cover just such situations as arose in *Aldine* and *Weissenberger,* when a commercial purpose colors a purchase for an ultimate residential use. The exemption is clearly designed to benefit residential purchasers. We do not believe the legislature intended to separate out residential purchasers acting as a condominium.

Accordingly, the Condominium is entitled to a refund of the sales tax paid on the purchases in question. The order of the Board of Finance and Revenue must be reversed.

ORDER

Now, August 2, 1984, the order of the Board of Finance and Revenue in the above referenced matter, dated December 26, 1975, is hereby reversed. Unless exceptions hereto are filed within thirty (30) days hereof, the Chief Clerk is directed to enter judgment in favor of Summit House Condominium and against the Commonwealth in the amount of $16,566.96, together with interest.

Judge WILLIAMS, JR. did not participate in this decision.

DISSENTING OPINION BY JUDGE PALLADINO:

I must respectfully dissent. The majority reads the sales tax exemption language of Section 201(m)[1] of the Tax Reform Code (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§7101-10004, as applying to all purchasers of electricity when the power is used solely for residential purposes. The logic is hinged upon the distinction between commercial and residential use. We concur in the observation that such a dichotomy is mandatory under *Aldine Apartments, Inc. v. Commonwealth,* 493 Pa. 480, 426 A.2d 118 (1981), *aff'g,* 39 Pa. Commonwealth Ct. 204, 395 A.2d 299 (1978); however, we believe that the legislature intended, and indeed created, a narrower harbor to those seeking the safety of the sales tax exemption provided by Section 201(m).

The statutory language limiting the imposition of the sales tax excludes electricity "when purchased *directly by the user thereof solely for his own residential use."*[2] The language creates four requirements which a consumer must meet before the exclusion applies. The electricity must be:

1) purchased directly
2) purchased by the user
3) used solely by the purchaser and
4) used for residential purposes only.

A careful analysis of the present situation reveals that Appellant meets only the second and fourth requirements.

A. *The Electricity Must Be Purchased Directly*

The majority reasons that since the Condominium Council (Council) is an agent for the individual unit owners, the unit owner is purchasing the electricity

---

[1] 72 P.S. §7201(m).

[2] *Id.* (Emphasis added.)

directly. The majority goes on to say that ''[t]he relationship between the Condominium Council, the management agent and the individual unit owners is rooted in agency not in business.''

This reasoning misses the mark. Agency and business are not mutually exclusive terms. Form is being commingled with substance. Residential, commercial and business are types of uses to which the electricity may be put. Agency on the other hand, describes the method by which one purchases the energy. This is not to say that a residential consumer of electricity cannot procure his supply through an agent. To be sure, an agent often stands in the principal's shoes.[3] However, the Council is much more than an agent for the unit owners. The Council purchases the electricity at a bulk rate discount and is billed via a single meter. The bulk discount which the Council receives is unavailable to the individual unit owners, and thus negates any direct purchase by the owners.

Additionally, the Council proportions the cost of the power to the individual unit owners according to the size of the unit. The Council thus provides a service to the individual owners as well as transacting business on their behalf. By providing this service to the ultimate user of the electricity, the Council prevents the user from purchasing the power directly.

B. *The Electricity Must Be Used Solely By The Purchaser*

If we assume for the moment that the Council is acting as the individual unit owners' agent and that they are one and the same, then all the unit owners are buying the electricity for themselves collectively. If a unit owner uses no electricity for a given time

---

[3] P.L.E. Agency §1, §97.

period, he is still billed for the power according to his unit's size, whereas an owner of an identical unit who uses a great deal of electricity will be billed the exact same amount. In any other residential setting the owner would only be billed for his actual use. Thus, the unit owners who use their electricity all the time are being subsidized by those who do not. Therefore, the electricity the total user consumes is being purchased in part, by the partial user and not used solely by the purchaser.[4]

Inasmuch as Appellant has failed to meet all four requirements imposed by Section 201(m), I would deny a reimbursement and affirm the decision made by the Sales Tax Board of Review.

Judge ROGERS and Judge MACPHAIL joined in this dissent.

---

[4] See *Weissenberger v. Commonwealth*, 54 Pa. Commonwealth Ct. 177, 180, 420 A.2d 768, 770 (1980).