**George D. FISH, Stephen Hrabrick and Jonathan A. Briskin, Appellants**

v.

**TOWNSHIP OF LOWER MERION.**

Commonwealth Court of Pennsylvania.

Argued May 14, 2014.

Decided Sept. 19, 2014.

---

Allan H. Freedman, Bryn Mawr, for appellants.

Kathleen M. Thomas, North Wales, for appellee.

BEFORE: DAN PELLEGRINI, President Judge, BONNIE BRIGANCE LEADBETTER, Judge, RENÉE COHN JUBELIRER, Judge, ROBERT SIMPSON, Judge, MARY HANNAH LEAVITT, Judge, P. KEVIN BROBSON, Judge, and PATRICIA A. McCULLOUGH, Judge.

OPINION BY Judge BROBSON.

Appellants George D. Fish (Fish), Stephen Hrabrick (Hrabrick), and Jonathan A. Briskin (Briskin) (collectively, Lessors) initiated this declaratory judgment action in the Court of Common Pleas of Montgomery County (trial court), challenging the Township of Lower Merion's (Township) imposition of its business privilege tax (BPT), calculated using gross receipts, on Lessors, who lease real property within the Township. On cross-motions for judgment on the pleadings, the trial court, in a September 24, 2013 Order, found in favor of the Township and against the Lessors. Because we conclude that the imposition of the BPT on Lessors' rental income (*i.e.,* their gross receipts from lease transactions) violates Section 301.1(f)(1) of the Local Tax Enabling Act (LTEA),[1] we reverse the trial court's order in part.

Each of the Lessors owns and leases real property within the Township, thereby deriving rental income from those properties. The Township's BPT is set forth in Section 138–42 of the Township's Municipal Code (Code), which provides:

> Every person engaging in *a business, trade, occupation or profession in the Township* shall pay an annual business privilege tax for the year beginning January 1, 1981, and for each tax year thereafter, at the rate of 1.5 mills on such person's *gross receipts.*

(Emphasis added.) In addition to payment of the BPT, the Code imposes an annual registration requirement and related fee:

> Every person desiring to continue to engage in or hereafter to begin to engage in *a business, trade, occupation or profession* at an actual place of business

---

1. Act of December 31, 1965, P.L. 1257, *as amended,* renumbered by the Act of July 2, 2008, P.L. 197, 53 P.S. § 6924.301.1(f)(1).

in the Township shall, on or before the 15th day of April of the tax year or prior to commencing business in such tax year, make application with the Collector for registration for each place of business in the Township, and if such person has no actual place of business within the Township, then one registration. Such registration shall be made by the completion of an application furnished by the Collector and the payment of a fee of $20 for each place of business. Each application for registration shall be signed by the applicant, if a natural person, and, in the case of an association or a partnership, by a member or partner thereof, and, in the case of a corporation, by an officer thereof, or by the authorized person of any other legal entity. The Collector shall, upon receipt of the completed registration form, issue a certificate of registration to such person which must be displayed in each place of business.

Section 138–41 of the Code (emphasis added).

The Code defines "business, trade, occupation or profession" as follows:

Any business, trade, occupation or profession in which there is offered any service or services to the general public or a limited number thereof, including but not limited to financial businesses and those enterprises engaged in by hotel operators; motel operators; office and/or residential apartment building operators; parking lot and garage operators; warehouse operators; lessors of tangible personal property; physicians and surgeons; osteopaths; podiatrists; chiropractors; veterinarians; optometrists; pharmacists; lawyers; dentists; engineers; architects; chemists; certified public accountants; public accountants; funeral directors; promoters; agents; brokers; manufac-

turers' representatives; advertising and public relations agencies; real estate brokers; insurance brokers and agents; cable television operators; operators of places of amusement providing either passive or active recreation; vending machine operators; barbershop operators and beauty shop operators; cleaning, pressing and dyeing establishment operators; laundry operators; shoe repair shop operators; tailors; upholsterers; electrical, plastering, bricklaying, carpentry, heating, ventilating, plumbing and painting contractors engaged in the class of heavy building or other construction of any kind or in the alteration, maintenance or repair thereof; and repairers of electrical, electronic and automotive machinery and equipment or other machinery and equipment and other wares and merchandise.

Section 138–40 of the Code (footnote omitted). "Gross receipts" is defined, in relevant part, as:

The gross amount of cash, credits or property of any kind or nature received in both cash and credit transactions allocable or attributable to the Township, whether derived from within or outside the Township, and regardless of the taxpayer's method of accounting, for services rendered (including labor and any materials employed in or becoming part of the service) or commercial or business transaction performed by any business, trade, occupation or profession.

*Id.*

As a first class township, the Township is authorized under the LTEA to levy, assess, and collect

taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions, and upon the transfer of real

property, or of any interest in real property, situate within the political subdivision levying and assessing the tax, regardless of where the instruments making the transfers are made, executed or delivered or where the actual settlements on such transfer take place.

Section 301.1(a) of the LTEA, 53 P.S. § 6924.301.1(a). The Township's BPT is a tax authorized under the LTEA. The authority to impose such a tax, however, is subject to restrictions, also contained in Section 301.1 of the LTEA. Relevant to this matter is the restriction in Section 301.1(f)(1), which provides that local authorities do not have the power under the LTEA to levy, assess, or collect "any tax on ... leases or lease transactions." 53 P.S. § 6924.301.1(f)(1).

In their declaratory judgment action, Lessors contend that they are not subject to the BPT or the annual registration requirement in the Code. With respect to the tax specifically, Lessors argue that the Township is prohibited from imposing the tax on Lessors' lease income by operation of Section 301.1(f)(1) of the LTEA. With respect to both the BPT and the annual registration requirement, Lessors contend that by their terms, the relevant Code provisions do not apply to Lessors' real estate lease transactions in the Township. Finally, Lessors contend that the Township was not authorized to impose a separate registration fee for each leased property of a single owner.

In its opinion in support of its September 24, 2013 Order (see Pa.R.A.P. 1925(a)), the trial court rejected each of Lessors' contentions. The trial court found that the BPT did not violate the LTEA's prohibition against taxing leases or lease transactions because the Code imposes the tax on Lessors' aggregate annual income/proceeds from the leases, not on each lease

transaction. In this regard, the trial court differentiated the BPT from the lease tax that the Pennsylvania Supreme Court found invalid in *Lynnebrook and Woodbrook Associates, L.P. ex rel. Lynnebrook Manor, Inc. v. Borough of Millersville*, 600 Pa. 108, 963 A.2d 1261 (2008). The trial court also concluded that Lessors' activities fall within the purview of the Code provisions imposing the registration and BPT requirements. Finally, the trial court found no authority to support Lessors' contention that the Code's scheme of requiring separate registrations and fees for each rental property was illegal.

On appeal, Lessors renew their challenge to imposition of the BPT on their rental property income based on Section 301.1(f)(1) of the LTEA. They also press their argument that their activities do not fall within the scope of the relevant Code provisions. This Court's scope of review of an order granting a motion for judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether questions of material fact remain outstanding such that the case should have gone to the jury. *Tobias v. Halifax Twp.*, 28 A.3d 223, 225 n. 4 (Pa.Cmwlth.2011), *appeal denied*, 616 Pa. 640, 47 A.3d 849 (2012). Our standard of review is plenary. *Id.*

We begin with Lessors' contention that their gross receipts from their rental properties are excluded from the Township's taxing authority by virtue of Section 301.1(f)(1) of the LTEA. This is a question of statutory construction, and, therefore, we are guided by the Statutory Construction Act of 1972 (Act), 1 Pa.C.S. §§ 1501–1991. The Act provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). "The clearest indication of

legislative intent is generally the plain language of a statute." *Walker v. Eleby,* 577 Pa. 104, 842 A.2d 389, 400 (2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Only "[w]hen the words of the statute are not explicit" may this Court resort to statutory construction. 1 Pa.C.S. § 1921(c). "A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations." *Bethenergy Mines Inc. v. Dep't of Envtl. Prot.,* 676 A.2d 711, 715 (Pa.Cmwlth.), *appeal denied,* 546 Pa. 668, 685 A.2d 547 (1996). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). It is presumed "[t]hat the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922(2). Thus, no provision of a statute shall be "reduced to mere surplusage." *Walker,* 842 A.2d at 400. It is also presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C.S. § 1922(1).

In addition, we note that the statutory provision at issue here is an exclusion from the Township's taxing authority under the LTEA. *Lynnebrook,* 963 A.2d at 1264; *see Lehigh–Northampton Airport Auth. v. Lehigh Cnty. Bd. of Assessment Appeals,* 585 Pa. 657, 889 A.2d 1168, 1175 (2005) ("Because the power to tax is vested within the General Assembly, real estate is immune from local taxation unless that body has granted taxing authority to political subdivisions."). As a statutory exclusion from the Township's taxing authority, we will, as the Pennsylvania Supreme Court did in *Lynnebrook,* strictly construe Section 301.1(f)(1) of the LTEA against the Township as the taxing body, meaning any doubt in the interpretation of this provi-

sion will be resolved in favor of Lessors. *Lynnebrook,* 963 A.2d at 1266; *Senex Explosives, Inc. v. Commonwealth,* 67 A.3d 1268, 1271 (Pa.Cmwlth.2013) (en banc), *aff'd,* —— Pa. ——, 91 A.3d 101 (2014) (per curiam).

Lessors argue that applying the above principles, Lessors' lease income is excluded from the Township's authority to assess a business privilege tax. They contend that a local tax on a lease or a lease transaction can take several forms, but that all, regardless of how they are characterized, are taxes on leases or lease transactions and thus unauthorized. In response, the Township argues that imposition of its BPT on Lessors is not an improper tax on leases or lease transactions; rather, it is a permitted tax on the privilege of doing business in the Township, citing, *inter alia,* the Pennsylvania Supreme Court's decision in *Gilberti v. City of Pittsburgh,* 511 Pa. 100, 511 A.2d 1321 (1986). The Township argues that Section 301.1(f)(1) of the LTEA should be interpreted as barring only a "direct tax," or per transaction tax, on leases or lease transactions, such as the flat $30 per lease transaction tax that the Pennsylvania Supreme Court rejected in *Lynnebrook.*

We first note that Section 301.1(a) of the LTEA grants broad taxing authority to the political subdivisions identified therein. Specifically, those political subdivisions may levy, assess, and collect taxes

on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions, and upon the transfer of real property, or of any interest in real property, situate within the political subdivision levying and assessing the tax, regardless of where the instruments making the transfers are made, executed or delivered or where the ac-

tual settlements on such transfer take place.

Section 301.1(a) of the LTEA. Under this section, then, political subdivisions may impose a tax on persons, on transactions, on occupations, on privileges, and on transfers of real property. Section 301.1(f)(1) of the LTEA, however, excludes from that authority the power to impose "*any* tax" on "leases or lease transactions." (Emphasis added.) In *Lynnebrook*, the Pennsylvania Supreme Court held that this exclusion from the local authority to tax must be interpreted in a manner "that most restricts the taxing authority—that is, the broadest interpretation of the lease exception: an unqualified prohibition on the taxation of leases." *Lynnebrook*, 963 A.2d at 1267.

Applying this binding guidance from the Pennsylvania Supreme Court, we are compelled to conclude that the Township's BPT, which imposes a 1.5 mill tax on gross receipts, violates the limitation on the Township's taxing authority in Section 301.1(f)(1) of the LTEA if applied to Lessors' lease revenue. That the tax is characterized as a tax on the privilege of engaging in business, and not on a particular transaction, is of no moment. Indeed, we recognize the Pennsylvania Supreme Court's decision in *Gilberti*, in which the court distinguished between an impermissible tax on "transactions" outside of city limits and a permitted tax on the "privilege" of doing business within a political subdivision applied against the gross receipts of the business, which may include income from transactions outside of city

limits. *Gilberti*, 511 A.2d at 1324–26. The *Gilberti* court, however, did not address the question of whether a tax on the "privilege" of doing business may be assessed against gross receipts from leases or lease transactions in light of Section 301.1(f)(1), which bars political subdivisions from assessing "*any* tax" on leases or lease transactions. That is the question before us.

Regardless of title, there is no material difference between a tax scheme that imposes a 1.5 mill tax upon the receipt of each rent payment (arguably a transactional tax), and a scheme that imposes a 1.5 mill tax payment annually based on all rent receipts (characterized by the Township as a business privilege tax). The only differences are title and timing. The exclusion in the LTEA bars "*any* tax"—*i.e.*, privilege, transactional, or otherwise—on leases or lease transactions. Because the Township's BPT would tax Lessors' lease revenue at a rate of 1.5 mills, it is a tax on leases or lease transactions and, thus, prohibited under the Supreme Court's interpretation of Section 301.1(f)(1) of the LTEA in *Lynnebrook*.[2]

■ Having concluded that the BPT (Section 138–42 of the Code) cannot be imposed on Lessors' gross revenue from their leases within the Township, we must still determine whether Lessors must comply with the registration requirements in Section 138–41 of the Code. This requires us to consider Lessors' arguments that their activities do not fall within the scope of the business activities regulated under this Code provision. Specifically, Lessors

**2.** In *City of Harrisburg v. School District of Harrisburg*, 551 Pa. 295, 710 A.2d 49 (1998), the Pennsylvania Supreme Court reversed a decision by an en banc panel of this Court, in which we held that a tax on the privilege of leasing tax exempt real property within the City of Harrisburg was valid under both the LTEA and the Uniformity Clause of the Penn-

sylvania Constitution. The LTEA challenge in that case, however, was not based on the prohibition against taxing leases or lease transactions set forth in Section 301.1(f)(1) of the LTEA. Accordingly, the issue we address today was not before this Court or the Pennsylvania Supreme Court in *City of Harrisburg*.

contend that the leasing of real property is not a "business, trade, occupation or profession," as that term is defined in the Code for two reasons: (1) because, unlike lessors of tangible personal property and other operators of certain real estate, lessors of real property are not expressly included in the Code definition, and (2) because Lessors do not provide a service to the general public or a limited number thereof.

As quoted above, the Code's definition of "business, trade, occupation or profession" includes, in sequence, a broad and general definition, the phrase "including but not limited to," followed by a list of examples. The list of examples includes, *inter alia*, "lessors of tangible personal property" and "operators" of types of real properties (*e.g.*, hotels, parking lots, office and apartment buildings), but not lessors of real property. Lessors contend that this list evidences the Township's intent to *exclude* lessors of real property from the definition of "business, trade, occupation or profession." We, however, cannot ascribe such exclusionary intent to a list of activities where the list is preceded by the phrase "including but not limited to."

As our Supreme Court explained,

the term "include" is "to be dealt with as a word of 'enlargement and not limitation,'" noting this was "especially true" when followed by the phrase "but not limited to."

*Dechert LLP v. Commonwealth*, 606 Pa. 334, 998 A.2d 575, 580–81 (2010) (quoting *Pa. Human Relations Comm'n v. Alto— Reste Park Cemetery Ass'n*, 453 Pa. 124, 306 A.2d 881, 885 (1973)). Moreover, the Supreme Court in *Dechert* cited with approval this Court's decision in *Aldine Apartments, Inc. v. Commonwealth*, 39 Pa. Cmwlth. 204, 395 A.2d 299 (1978) (en banc), *aff'd*, 493 Pa. 480, 426 A.2d 1118 (1981), wherein we held that "the statutory

language 'including, but not limited to' . . . is a clear indication that the Legislature intended to exclude nothing, implicitly or otherwise, by the language which follows those words." *Aldine Apartments*, 395 A.2d at 302. Accordingly, we reject Lessors' proposed construction.

Lessors' second argument—*i.e.*, that they do not provide a service to the general public or a limited number thereof—is similarly unavailing. According to Lessors' Second Amended Complaint, Fish owns and leases a single property. He leases the first floor to a business that he operates and leases a residential unit on the second floor to a tenant. Hrabrick owns and leases multiple properties comprised of single family rentals, student rentals, and a mixed use building (retail, office, and/or residential). Briskin owns and leases a commercial real estate rental property, in which three businesses operate. Lessors do not contend that their receipt of rental income is a passive activity. *See Maggio v. Tax Review Bd. of Phila.*, 674 A.2d 755 (Pa.Cmwlth.1996) (discussing circumstances where rental income may not be taxable business activity), *appeal denied*, 547 Pa. 739, 690 A.2d 238 (1997). To the contrary, from the allegations in the Second Amended Complaint, we agree with the trial court that Lessors own these properties for the purpose of renting them to other individuals and entities (at least part of the public at large) to generate lease revenue. Such is a business activity under the Code.

For the reasons set forth above, the trial court's determination that Lessors' real estate rental activities within the Township fall within the Code's definition of "a business, trade, occupation or profession" is affirmed. We, however, reverse the trial court's determination that Lessors' rental income can be subjected to the Township's BPT, in light of the exclusion of "any tax

... on leases or lease transactions" from the Township's taxing authority under the LTEA.

### ORDER

AND NOW, this 19th day of September, 2014, the order of the Court of Common Pleas of Montgomery County (trial court), dated September 24, 2013, is REVERSED with respect to the trial court's determination that the Township of Lower Merion (Township) may impose the tax set forth in Section 138–42 of the Township's Municipal Code on Appellants' real property rental income/gross receipts. In all other respects, the trial court's order is AFFIRMED.

DISSENTING OPINION BY President Judge PELLEGRINI.

Because Lower Merion Township's (Township) business privilege tax (BPT) is a tax on the *privilege* of leasing real property in the Township, a different subject of tax, and not on the leases or lease transactions themselves, I would hold that the Township's BPT does not violate Section 301.1(f)(1) of the Local Tax Enabling Act (LTEA).[1] Accordingly, I respectfully dissent.

Appellants have a number of rental properties in the Township from which they derive rent. Section 301.1(a) of the LTEA authorizes local taxing authorities to levy, assess and collect "taxes as they shall determine on persons, *transactions*, occupations, *privileges*, subjects and personal property within the limits of such political subdivisions ..." 53 P.S. § 6924.301.1(a) (emphasis added). Pursuant to that authorization, the Township has enacted a business privilege tax on any

"business, trade or occupation."[2] Appellants contend such a tax on their privilege of doing business, measured by the amount of rent they received, is actually a tax on rent prohibited under Section 301.1(f)(1) of the LTEA, which excludes taxing authorities from imposing any tax on "leases or lease transactions."

Reversing the trial court and based on our Supreme Court decision in *Lynnebrook and Woodbrook Associates, L.P. ex rel. Lynnebrook Manor, Inc. v. Borough of Millersville*, 600 Pa. 108, 963 A.2d 1261 (2008) ("*Lynnebrook*"), the majority finds that the business privilege tax is a tax on a lease or a lease transaction. I disagree that the Township's business privilege tax is a tax on a lease or lease transaction and that *Lynnebrook* is controlling.

*Lynnebrook* is not controlling because the tax at issue in that case was not a "business privilege tax." In that case, the municipality's ordinance provided that "[a] tax is hereby levied and imposed, for general Borough purposes, on every Lease Transaction, at the rate of thirty ($30.00) dollars." *Id.* at 1262. The Ordinance defined a lease transaction as "a transaction under which an Owner, either directly or through an agent ... and any other person or persons enter into an agreement under which such person or persons is/are allowed to become Occupant(s) of a Residential Rental Unit for a period equal to or less than one year." *Id.* Our Supreme Court found that this flat rate on every transaction violated Section 301.1(f)(1) of the LTEA's prohibition against taxing leases or lease transactions. What is involved here is not a tax on a lease transaction involving the receipt of rent.

---

**1.** Act of December 31, 1965, P.L. 1257, as amended, renumbered by the Act of July 2, 2008, P.L. 197, 53 P.S. § 6924.301.1(f)(1).

**2.** Section 138–42 of the Lower Merion Township Business Privilege Tax Ordinance.

As our Supreme Court explained in *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 511 A.2d 1321, 1324 (1986):

> The "privilege" of engaging in business within the City, which the [LTEA] establishes as a subject that may be taxed, ... must be regarded as being separate and apart from "transactions" within the City that may be taxed. To regard it otherwise would be to ignore the significance of the two subjects for taxation having been separately stated in the [LTEA]. (Citation omitted).

Since *Gilberti*, this Court has consistently reaffirmed the proposition that "a business privilege tax does not tax each ... and every transaction." *School District of City of Scranton v. R.V. Valvano Const. Co., Inc.*, 863 A.2d 48, 54–55 (Pa.Cmwlth. 2004) (citing *Township of Lower Merion v. QED, Inc.*, 738 A.2d 1066 (Pa.Cmwlth.), *appeal denied*, 565 Pa. 680, 775 A.2d 811 (2001)). Instead, a business privilege tax is a tax on a different subject of taxation than a lease—the privilege of doing business measured on the gross receipts of the person engaged in business.[3]

A case similar to this one that illustrates that a business privilege tax is a different subject of taxation than a lease or lease transaction is *School District of City of Scranton v. Dale and Dale Design and Development, Inc.*, 559 Pa. 398, 741 A.2d 186 (1999), where our Supreme Court rejected an argument similar to the one made here. In that case, the issue was whether a business privilege tax could be imposed on a contractor's receipts from residential construction given that Section 2(11) of the LTEA provided that local governments shall not have the authority "[t]o levy, assess or collect a tax on the construction of or improvement to residential dwellings." 53 P.S. § 6902(11), renumbered as 53 P.S. § 6924.301.1(f)(11). Like here, the taxpayer in that case contended that imposition of a business privilege tax for residential construction violated the LTEA. Our Supreme Court rejected that argument, stating that "the business privilege tax is imposed upon the privilege of conducting business within the City, determined by the gross receipts of the business. It is not a tax upon the construction of a residential dwelling ..., which is prohibited by the Act." *School District of City of Scranton*, 741 A.2d at 189.

Given the well-established distinction between business privilege taxes, taxes on transactions and real property taxes, the majority's assertion that *Lynnebrook's* holding extends to the privilege of leasing real estate is unavailing. As the trial court correctly found, *Lynnebrook* is inapplicable here.

Accordingly, I respectfully dissent.

Judge LEADBETTER joins in this dissenting opinion.

---

**3.** A business privilege tax is not a tax on a lease either. A lease is an interest in real property entered between a property owner—the lessor—and a lessee who may or may not occupy the property and, if not forbidden by the lease, may sublease the property. A tax on a lease would be imposed on the value of the lease—what a willing lessee would pay to rent the property given the term of months or years left on the lease. In a long-term commercial lease, the rent imposed may not have any relationship to the rent received. Moreover, leases themselves are taxed as part of the real estate on the owner of the real estate because leases are included in the value of the real property. *See Tech One Associates v. Board of Property Assessment, Appeals and Review of Allegheny County*, 617 Pa. 439, 53 A.3d 685 (2012).