717 A.2d 504

**PENNSYLVANIA POWER & LIGHT COMPANY, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, BOARD OF FINANCE AND REVENUE, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 9, 1997.

Decided Aug. 20, 1998.

Robert L. Weldon, Harrisburg, for PA Power and Light Co.

Matthew W. Tomalis, Bart J. DeLuca, Harrisburg, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

### OPINION

ZAPPALA, Justice.

We must determine whether late payment charges collected by an electric utility company on customers' unpaid electric bill balances constitute gross receipts received from the "sales of electric energy" as set forth in the Utilities Gross Receipts Tax under Article XI of the Tax Reform Code, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 8101(b) (Code).[1]  The Commonwealth Court answered this inquiry in the affirmative and held that funds received as late payment fees are subject to the Utilities Gross Receipts Tax. We affirm.

---

1. The pertinent language of this section provides that every electric light company organized by or under any law of this Commonwealth shall pay a tax upon each dollar of the gross receipts received from the sales of electric energy.  72 P.S. § 8101(b).

Appellant, Pennsylvania Power & Light Company (PP & L), is a public utility company engaged in the business of producing, distributing and selling electric energy. As a result of its activities in Pennsylvania during 1987, the tax year at issue, PP & L was subject to the Utilities Gross Receipts Tax imposed under the Code. 72 P.S. § 8101 et seq.

PP & L is required to submit annual tax reports to the Federal Energy Regulatory Commission (FERC) pursuant to 16 U.S.C. § 825c. These reports must be prepared pursuant to the Uniform System of Accounts of the FERC. 18 C.F.R. § 101 (1995). PP & L is also required to file annual financial reports with the Pennsylvania Public Utilities Commission (PUC), 66 Pa.C.S. § 504; 52 Pa.Code § 57.47, which are also to be prepared in accordance with the Uniform System of Accounts of the FERC. 52 Pa.Code § 57.42(a).[2]

PP & L filed its gross receipts tax report for the calendar year ending December 31, 1987, with the following designations of taxable gross receipts: (1) income received from the sales of electric energy not including sales for resale; (2) income received from the sales of current for lighting, heating or power to other utilities or municipalities for the purpose of resale; and (3) income received from consumers' forfeited discounts and penalties.

PP & L's gross receipts tax report was settled by the Department of Revenue on or about October 10, 1988, and was approved by the Department of the Auditor General approximately one week later. On January 17, 1989, PP & L filed a Resettlement Petition with the Board of Appeals for the Department of Revenue. Therein, PP & L asserted that it had erroneously included on its tax report gross receipts which represented finance charges received from customers for late payment of their electric bills. It argued that since

2. Electric public utilities are classified for accounting and reporting purposes according to their annual electric operating revenues. 52 Pa.Code § 57.41. Each class, with the exception of public utilities having annual operating revenues between $25,000 and $150,000, shall keep its accounts in conformity with the Uniform System of Accounts Prescribed for Public Utilities and Licensees of the Federal Energy Regulatory Commission. 52 Pa.Code § 57.42.

consumer finance charges did not constitute gross receipts from the sale of electricity, they were not taxable under the Code.

The Board of Finance and Revenue subsequently informed PP & L that because the Department of Revenue and the Department of the Auditor General had been unable to agree on the resettlement of PP & L's gross receipts tax, the matter had been referred to the Board of Finance and Revenue. That Board rejected PP & L's arguments and upheld the resettlement amount.

The Board of Finance and Revenue later notified PP & L that its decision was invalid due to the fact that two members of the Board agreed with the resettlement, two members had dissented, and two members had not participated in the decision. The matter was then referred to the Board of Appeals for the Department of Revenue which, upon approval by the Department of the Auditor General, issued an order whereby it refused to resettle PP & L's gross receipts tax.

Pursuant to the authorization granted by Section 1103 of the Fiscal Code, 72 P.S. § 1103, PP & L filed a petition for review with the Board of Finance and Revenue. By order of February 20, 1991, the Board of Finance and Revenue affirmed the determination of the Board of Appeals for the Department of Revenue and denied PP & L's petition for review. The Board of Finance and Revenue concluded that the consumer finance charges were such an integral component of the filing for the sale of electric energy that they should be included in taxable gross receipts unless there was a clear legislative intent to exclude them.

The Commonwealth Court affirmed, finding that because the income received through the imposition of late charges resulted directly from PP & L's sales to electric energy customers, it was a component of the gross receipts of the "sales of electric energy" described in the Code. The court held that although a public utility is required to keep its accounts in conformity with the Uniform System of Accounts of the FERC, there is no evidence that the regulations gov-

erning the FERC were inextricably tied to or wholly incorporated into the Code. It went on to hold that the FERC's authority over state matters has been specifically limited such that federal regulation only extends to those matters which are not subject to regulation by the states.

Judge Pellegrini filed a dissenting opinion in which President Judge Colins joined. The dissent found that the language of Section 8101(b) only imposes a tax on the sale of electricity itself and not anything directly related to the sale. It asserted that pursuant to the majority's analysis, a sales tax should be imposed on finance charges that department stores collect when account balances are not paid in full.

As noted, the statute at issue provides that every electric light company shall pay a tax upon each dollar of the gross receipts received from the "sales of electric energy." 72 P.S. § 8101(b). PP & L relies on the Uniform System of Accounts in support of its contention that the generally accepted definition of the term "sales of electric energy" does not encompass late charges. It asserts that the Uniform System of Accounts divides total operating revenue into two categories. The first category is entitled "Sales of Electric Energy" which includes all revenue sources constituting sales of electricity and specifically excludes late payment charges. The second category, "Other Electric Revenues," includes an account called "forfeited discounts," which is defined to include charges "to customers for failure to pay bills within a specified time." PP & L contends that because 52 Pa.Code § 57.42(a) requires that it utilize the Uniform Systems of Accounts of the FERC, the term "sales of electric energy" should be examined in light of its use in the accounting system.

The Commonwealth contends that PP & L's reliance on the FERC characterization is misplaced. It cites *Tygart Resources, Inc. v. Commonwealth of Pennsylvania*, 134 Pa. Cmwlth. 168, 578 A.2d 86 (1990), *aff'd*, 530 Pa. 199, 607 A.2d 1074 (1992), where the Commonwealth Court refused to incorporate the Internal Revenue Code (IRC) definition of "royalties" into the Tax Reform Code for purposes of determining passive investment income. The court acknowledged that the

IRC is specifically referred to in the Tax Reform Code and that one statutory requirement for Pennsylvania S corporation status is the same under the IRC, but concluded that the IRC definition did not control. In deciding whether to rely on federal or state concepts, the court examined whether the state statute was inextricably tied to the federal one. The court also looked to the language of the state statute, its history and the past administrative practices of the Commonwealth.[3]

The Commonwealth contends that there is no indication in the record that the FERC regulations were considered in the drafting of any part of the Tax Reform Code or its predecessor statute imposing the gross receipts tax, as neither the language of the statute itself or its available legislative history includes any reference to the FERC. It argues that because the late charges at issue are authorized by PP & L's tariff, these charges are in fact "rates" applied to electricity sold.[4] The Commonwealth further submits that gross receipts received from higher rates imposed on late-paying customers constitute payment for electricity in the same manner as gross receipts derived from rates applicable to timely payments. It relies on *Iowa–Illinois Gas & Electric Co. v. Birmingham*, 66 F.Supp. 441 (S.D.Iowa 1946), where the federal district court determined that additional amounts charged to late-paying customers constituted payment for sales of electricity.

3. In *Tygart*, the Commonwealth Court relied on our decision in *Commonwealth v. General Refractories*, 417 Pa. 153, 207 A.2d 833 (1965), where we found that the IRC definition of what constituted a dividend applied to the Tax Reform Code for corporate net income tax purposes. In *General Refractories*, we examined the history of the state statutory provision and discussed how the statutory language had always been based upon corresponding provisions of the IRC. We concluded that the state adjustment for dividends received could "only be explained in terms of the Federal Code," and that the statute "inextricably ties the deduction to the Federal Code." 207 A.2d at 837.

4. Rates charged by PP & L to its intrastate retail customers are pursuant to tariffs filed with and approved by the Pennsylvania Public Utility Commission. Late charges imposed by PP & L on residential customers are calculated at a rate of 1.25 percent monthly on the unpaid balance of their bills. Late charges imposed on nonresidential customers are imposed at a rate of 5 percent on the first $200 of the unpaid balance of the monthly bill and 2 percent on the remainder.

■ We agree that the federal accounting procedure which the Pennsylvania Code requires PP & L to follow does not control our interpretation of the Pennsylvania Tax Reform Code. The Commonwealth Court correctly held that the gross receipts received from the higher rates imposed on late-paying customers constitute payment for the electricity sold as much as do gross receipts derived from rates applicable to timely payments.[5]

■ We also reject PP & L's contention that the Commonwealth Court erred by failing to strictly construe Section 8101(b) in its favor. It is well settled that a statute imposing a tax must be strictly construed, 1 Pa.C.S. § 1928(b)(3), and any doubt or uncertainty as to the imposition of the tax must be resolved in favor of the taxpayer. *Commonwealth v. Rieck Inv. Corp.*, 419 Pa. 52, 213 A.2d 277 (1965). PP & L offers the following examples of doubt and uncertainty surrounding the taxing of the receipt of charges imposed on past-due accounts: (1) the matter was initially decided by the Board of Finance and Revenue with a vote of 2–2–2; (2) the Board of Finance and Revenue found the finance charges *non-taxable* for the calendar year ending December 31, 1986;[6] (3) the Internal Revenue Service allows an interest deduction for electric utility finance charges; and, (4) two members of the Commonwealth Court dissented from the majority opinion.

**5.** Contrary to the Commonwealth's argument, however, the federal case of *Iowa–Illinois* is not instructive. *Iowa–Illinois* involved a former federal excise tax upon the sale of electrical energy which was imposed pursuant to Section 3411(a) of Title 26 U.S.C. The United States District Court for the Southern District of Iowa held that it was inappropriate to include receipts from electric late payment charges in the federal excise tax base. Unlike the instant case, however, the federal statute in *Iowa–Illinois* specified that the tax was to be paid pursuant to regulations promulgated by the Commissioner of Internal Revenue which expressly provided that late payment penalties were subject to the tax at issue.

**6.** We note that the Commonwealth Court asserted that the Board of Finance and Revenue provided no explanation as to why it granted PP & L a refund on the late payment charges received in 1986, while it filed a written opinion as to why those amounts were taxable in 1987. PP & L asserts that the lack of explanation for the 1986 decision is insignificant as the Board was not required to issue written opinions at that time.

We are not convinced that differences in opinion among members of adjudicating bodies over the interpretation of a statutory provision necessarily signifies that there is doubt and uncertainty in the statutory language. A holding to the contrary would result in the taxpayer automatically prevailing in the event a decision is reached without a consensus. As we find that the receipts at issue are no different in substance from receipts which are clearly taxable, we see no uncertainty in the statute.

Finally, we hold that the instant late payment charges are distinguishable from finance charges imposed by department stores because sales tax, unlike the gross receipts tax at issue, is imposed at retail on the "purchase price" of an item. The definition of purchase price expressly excludes any amount of "interest or discount paid or allowed after the sale is consummated...." 72 P.S. § 7201(g). Here, there is no statutory language indicating that finance charges are not to be included in the gross receipts tax base as the term "sales of electricity" is not defined. The Legislature could define sales of electricity to exclude finance charges, but, for whatever reason, it has not done so.

Accordingly, the order of the Commonwealth Court is affirmed.

NEWMAN, J., did not participate in the consideration or decision of this case.

NIGRO, J., concurs in the result.