**DECHERT LLP, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 9, 2007.

Decided April 25, 2007.

David R. Kraus and Randy L. Varner, Harrisburg, for petitioner.

Karen M. Gard, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, LEAVITT, Judge (P.), and FLAHERTY, Senior Judge.

OPINION BY President Judge LEADBETTER.

Petitioner Dechert LLP petitions for review of the order of the Board of Finance and Revenue (Board), which denied its request for a refund for sales taxes paid in connection with the purchase of licenses to use computer software during the period November 2, 2000, through December 31, 2003. On appeal, Dechert contends that a license to use software does not constitute "tangible personal property" as that phrase is defined by Section 201(m) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7201(m) and, therefore, is not subject to the tax imposed by Section 202 of the Code, 72 P.S. § 7202. In making this argument, Dechert contends that this court's recent decision in *Graham Packaging Co., LP, v. Commonwealth*, 882 A.2d 1076 (Pa.Cmwlth.2005), which is virtually indistinguishable, was wrongly decided.[1] After review, we conclude that *Graham Packaging* is directly on point and, therefore, controlling. Based thereon, we affirm.

The parties' stipulation of facts establishes the following.[2] Dechert, a limited liability partnership with offices worldwide, provides professional legal services. During the tax period at issue, Dechert paid tax in the amount of $211,394.70 in connection with purchases related to canned software[3] licenses. Specifically, the taxes were paid as follows:

a. A portion of the licenses purchased consisted of licenses to use software in which [Dechert] received tangible items such as the software program on a storage media, i.e., disk or CD and product manuals. The amount of tax paid by [Dechert] for such licenses was $28,837.21.

b. A portion of the licenses purchased consisted of license renewals for products previously purchased by [Dechert]. The license payments were for continued use of the same software programs, initially delivered on disk to [Dechert], or for a newer version of those programs. The amount of tax paid on those license renewals was $121,648.55.

c. A portion of the amount paid by [Dechert] was for computer software support and maintenance services such as telephone support. The amount of tax paid by [Dechert] for maintenance and support [was] $59,741.34. The amount paid . . . for maintenance and support does not involve any transfer of software or tangible personal property.

---

1. In *Graham Packaging*, this court held that "canned" computer software programs constituted "tangible personal property" as defined by the Code and that fees paid to renew licenses to use the canned software programs were subject to tax under Section 202.

2. Our review on appeal is de novo and is based on either a record created before this court or stipulated facts. Pa. R.A.P. 1571; *Graham Packaging*.

3. The Department of Revenue defines "canned software" as: "Computer software that does not qualify as custom software." 61 Pa.Code § 60.19(b). "Custom software" is defined, in turn, as "[c]omputer software designed, created and developed for and to the specifications of an original purchaser." *Id.*

d. A portion of the amount paid was for licenses for software programs that were delivered electronically by the vendor. The amount of tax paid by [Dechert] on the electronically delivered software programs [was] $1,167.60.

Stipulation of Facts dated October 11, 2006, at 2. With respect to those programs delivered on disk, the cost of the disk was minimal.

In addition, the parties stipulated that: (1) "a software program is a set of instructions that is manifested on disk, tape or computer chip in machine readable form by arranging electrons, by use of an electric current, to create either magnetized or unmagnetized space," which is then read by the computer; (2) the purchaser of the software acquires a copy of the software; (3) a copy of the software cannot be used or installed without a license and agreement to the terms thereof; (4) software program developers and vendors have intellectual property rights in the software and the software licenses purchased by Dechert are for programs that contain patented processes that are embodied in the program and instruct the computer to perform certain functions; (5) a license grants the purchaser the right to use the software, including the patented processes embodied therein, as well as the right to make a copy of the copyrighted software for the purchaser's own use; (6) a patent owner has the right to exclude others from using the patented process or invention and, therefore, use of a software program without a license violates the patent holder's intellectual property rights; and (7) although Dechert received many unsolicited copies of software on disk free of charge during the tax period at issue, it could not use the software without purchasing a license to use the programs from a vendor.

In November 2003, Dechert sought a refund of sales tax it paid in connection with, inter alia, its purchase of licenses to use canned software programs.[4] The Board of Appeals denied relief with respect to the taxes paid on the license fees. The Board of Finance and Revenue affirmed[5] and the present appeal followed.

In contending that the purchase of a license to use canned software does not constitute "tangible personal property" subject to tax under the Code, Dechert focuses on the intangible nature of the license, rather than the tangibility of the software itself. Specifically, Dechert argues:

[T]he tangible media on which the software content is transferred is of no value to the parties and it is understood that the price paid for the license to use the software is determined by the intangible intellectual property rights that are acquired with regard to the software program and not on the value of any tangible property exchanged. In many

---

**4.** While it is unclear whether Dechert paid a sales or use tax on the license fees, we presume it paid a sales tax because the Board characterized Dechert's argument as: "Petitioner contends that it erroneously paid tax on purchases of non-taxable computer software licenses and software maintenance agreements. Petitioner states that under 72 P.S. § 7202(a), tax is only imposed upon each separate sale at retail of tangible personal property or services...." Board's opinion (Docket Nos. 0323530, 0323531) at 4 (mailed November 19, 2004). As noted *infra*, a sales tax, rather than a use tax, is imposed pursuant to Section 202(a) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7202(a). However, our analysis does not hinge on whether a sales or use tax was paid.

**5.** In doing so, the Board noted that, "[t]he sale at retail or use of canned software, including updates, enhancements and upgrades is subject to tax. (See, 61 Pa.Code § 60.19(c)(2)(i))".

cases, tangible media is not needed because licensees may download the program electronically, yet pay the same price for the license to copy and use the software. In that case, even though the program may reside on the licensee's computer hard drive, it cannot be used without the purchase of a license and agreement to the license terms. After all, software is merely a series of instructions and a machine-readable disk is merely a convenient way to communicate those instructions. Accordingly, consideration paid for a license to use canned computer software is consideration paid for intangible intellectual property rights, that is, the right to use those instructions, not consideration paid for the transfer of tangible personal property.

Petitioner's appellate brief at 11. As both the relevant statutory/regulatory framework and our discussion in *Graham Packaging* make clear, Dechert's focus is misplaced.

■ We begin by noting that pursuant to Section 202(a) of the Code, a tax of six percent is imposed on "each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth...." 72 P.S. § 7202(a). A "sale at retail" is defined, in turn, as "[a]ny transfer, for a consideration, of the ownership, custody or possession of tangible personal property, *including the grant of a license to use or consume* whether such transfer be absolute or conditional and by whatsoever means the same shall have been effected." Section 201(k)(1) of the Code, 72 P.S. § 7201(k)(1) (emphasis added). "Tangible personal property" is defined, in part, as "[c]orporeal personal property including, but not limited to, goods, wares, merchandise, steam and natural and manufactured and bottled gas for non-residential use, electricity for non-residential use, prepaid telecommunications, premium cable or premium video programming service, spirituous or vinous liquor[, and] ... interstate telecommunications service originating or terminating in the Commonwealth...." Section 201(m) of the Code, 72 P.S. § 7201(m). In addition, the Department's statement of policy,[6] appearing at 61 Pa.Code § 60.19, provides that the sale at retail or use of canned software is subject to sales and use tax "as the sale at retail or use of tangible personal property." *Id.* at (a). See also subsection (c)(2)(i) (providing that "sale at retail or use of canned software, including updates, enhancements and upgrades is subject to tax").[7]

In *Graham Packaging*, this court addressed the same issue raised herein, to wit, whether fees paid to renew licenses to use canned software programs were taxable under Section 202 of the Code.[8] In order to answer that question, the court was required to determine whether canned software constituted tangible personal property, an issue of first impression at that time. In concluding that canned software constituted tangible personal property under the Code, the court examined the

---

**6.** Unlike regulations, statements of policy do not have the force of law. *Graham Packaging Co., LP, v. Commonwealth,* 882 A.2d 1076 (Pa.Cmwlth.2005).

**7.** Conversely, the sale at retail of custom software is not subject to tax. Rather, custom software is treated as the purchase of a "non-taxable computer programming service." *See*

61 Pa.Code § 60.19(c)(2)(ii). *See also Graham Packaging,* 882 A.2d at 1079–80, 1087 (discussing and comparing taxability of canned and custom software).

**8.** In that case, the parties stipulated that while the taxpayer originally purchased the software on computer disk(s), the license renewals did not involve any disks.

applicable statutory and regulatory provisions, focusing on both the amendments thereto and the definition of tangible personal property,[9] the inherent nature of software,[10] and the analyses employed in other jurisdictions addressing the same issue.[11] These factors lead to the conclusion that "the sale of all canned software, whether transmitted electronically or on a physical medium, is taxable as the sale of tangible personal property. Accordingly, since Graham purchased licenses to use canned software, the sales tax was properly imposed." 882 A.2d at 1087.

Thus, pursuant to *Graham Packaging*, licenses to use canned software are taxable under the Code.[12] Accordingly, the order of the Board is affirmed.

9. In doing so, the court took particular note of the physical nature, or lack thereof, of the different items included in the definition. The court observed that tangible personal property, as defined, could not be interpreted to encompass only property with a physical state that could be discerned by or measured with the unaided eye. Otherwise, we noted, inclusion of such items as gas, electricity, cable, video programming and telecommunication services within the definition would be incongruous. *Id.* at 1086.

10. This court concluded that a purchaser of canned software:

> is acquiring more than incorporeal knowledge or an intangible right; rather, the purchaser is acquiring an electronic copy of a computer program that is stored on a computer's hardware, takes up space on the hard drive and can be physically perceived by checking the computer's files. It remains in the computer and operates the program each time it is used.

*Id.* at 1086–87.

11. Ultimately, the court found that the "essence of the transaction test" was the logical approach to determining whether a transfer, involving both tangible and intangible property or tangible property as well as a service, constitutes a sale of tangible personal property. That approach can summarily be described as follows:

> In order to determine whether a taxable sale of tangible personal property has occurred, the test focuses on whether the essence or true object of the sale is tangible personal property or intangible property or a service with tangible property serving only as the medium of transmission. If the essence of the transaction or true object of the transaction is the intangible property or service, the intangible object/service does not assume the taxable character of the

tangible property serving as the medium of transfer.

*Id.* at 1083 (citation omitted). In adopting this approach, the court opined:

> [T]he essence of the transaction test does not exalt form over substance; it results in the uniform tax treatment of all canned software; and it avoids the potential for parties to structure their transactions to avoid tax liability. Finally, it does not leave in limbo the nature of a license, like those evidently at issue here, to use software originally transmitted on a disk, but later substantially altered by electronically downloaded upgrades. In sum, we conclude that it is the nature of the software itself, not the package in which it comes, which must determine whether the software and accompanying license is tangible personal property.

*Id.* at 1086.

12. Notwithstanding that *Graham Packaging* compels an affirmance, Dechert's attempts to undermine that decision are without merit. The fact that canned software is not specifically included in the definition of tangible personal property does not compel a different conclusion. By its express terms, the definition is not all inclusive. Moreover, the statutory changes and corresponding statement of policy support the conclusion that canned software was intended to be treated as tangible personal property under the Code. *See Graham Packaging*. As we noted in *Graham*, the Code, prior to the 1997 amendments, demonstrates that the legislature viewed custom and canned software differently, a matter properly within the legislature's wide discretion. Such distinction and difference in tax treatment does not lead to an absurd result. Finally, Dechert's argument that application of the essence of the transaction test requires the conclusion that intellectual property rights are the true object of the transaction was squarely rejected in *Graham*.

## ORDER

AND NOW, this 25th day of April, 2007, the order of the Board of Finance and Revenue in the above-captioned matter is hereby AFFIRMED. Judgment shall become final unless exceptions are filed within thirty days of this order pursuant to Pa. R.A.P. 1571(i).