998 A.2d 575

**DECHERT LLP, Appellant**

v.

**COMMONWEALTH of Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 2, 2008.

Decided July 20, 2010.

David Robert Kraus, McNees Wallace & Nurick LLC, Harrisburg, Lee Allen Zoeller, Reed Smith LLP, Philadelphia, for Dechert LLP.

Karen Marie Gard, PA Office of Attorney General, J. Bart DeLone, Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Justice TODD.

In this direct appeal from the Commonwealth Court, we consider whether "canned" computer software[1] constitutes "tangible personal property," such that the purchase of such software is subject to sales tax under the Tax Reform Code, 72 P.S. § 7201 et seq. (the "Code").[2] For the reasons that follow, we conclude that canned computer software is tangible personal property, and, therefore, that purchases thereof are taxable.

### I. Factual and Procedural History

Appellant Dechert LLP ("Dechert") is a limited liability partnership which provides legal services. Between November 2, 2000, and December 31, 2003, Dechert paid $211,394.70 in state sales tax in connection with the purchase of canned computer software licenses. The parties stipulate to the following payments by Dechert:

a. A portion of the licenses purchased consisted of licenses to use software in which [Dechert] received tangible items such as the software program on a storage media, i.e., disk or CD and product manuals. The amount of tax paid by [Dechert] for such licenses was $28,837.21.

b. A portion of the licenses purchased consisted of license renewals for products previously purchased by [Dechert]. The license payments were for continued use of the same software programs, initially delivered on disk to [Dechert], or for a newer version of those programs. The amount of tax paid on those license renewals was $121,648.55.

1. The Pennsylvania Department of Revenue defines canned software as "[c]omputer software that does not qualify as custom software." 61 Pa.Code § 60.19(b). Custom software is further defined as "[c]omputer software designed, created and developed for and to the specifications of an original purchaser." *Id.*

2. Act of March 4, 1971, P.L. 6.

c. A portion of the amount paid by [Dechert] was for computer software support and maintenance services such as telephone support. The amount of tax paid by [Dechert] for maintenance and support [was] $59,741.34. The amount paid ... for maintenance and support does not involve any transfer of software or tangible personal property.[3]

d. A portion of the amount paid was for licenses for software programs that were delivered electronically by the vendor. The amount of tax paid by [Dechert] on the electronically delivered software programs [was] $1,167.60.

*Dechert LLP v. Commonwealth*, 922 A.2d 87, 88–89 (Pa. Cmwlth.2007) (*"Dechert I"*). In November 2003, Dechert filed an application with the Board of Appeals, seeking a refund of sales tax it had paid in connection with the transactions identified above. The Board of Appeals denied relief, and Dechert appealed to the Board of Finance and Revenue, which affirmed. Dechert filed a petition for review challenging this determination in the Commonwealth Court, arguing that a license to use canned computer software is not tangible personal property subject to sales tax.

On April 25, 2007, a three-judge panel of the Commonwealth Court affirmed, pending exceptions,[4] the order of the Board of Finance and Revenue in a published opinion. In doing so, the court noted that Section 7202(a) of the Code imposes a six percent tax on each sale at retail of tangible personal property or services; that a "sale at retail" is defined under Section 7201(k)(1) of the Code as "[a]ny transfer, for a consideration, of the ownership, custody or possession of tangible personal

---

**3.** It is undisputed that $59,741.34 of the money paid by Dechert was for computer software support and maintenance services, which did not involve any transfer of tangible personal property. Under prevailing law, it therefore would appear that this amount is not taxable. However, Dechert fails to argue this distinction.

**4.** Under Rule 1571(i) of Pennsylvania's Rules of Appellate Procedure, which pertains to review of determinations of the Board of Finance and Revenue, any party may file exceptions to an initial determination by the Commonwealth Court within 30 days after the entry of the order to which the exception is taken. Timely exceptions have the effect, for purposes of Pa.R.A.P. 1701(b)(3) (authority of lower court or agency after appeal), of an order expressly granting reconsideration of the determination previously entered by the court.

property, *including the grant of a license to use or consume* whether such transfer be absolute or conditional and by whatsoever means the same shall have been effected"; and that "tangible personal property" is defined, in part, under Section 7201(m) of the Code as "[c]orporeal personal property including, but not limited to, goods, wares, merchandise, ... electricity for non-residential use, prepaid telecommunications, premium cable or premium video programming service ... [and] ... interstate telecommunications service originating or terminating in the Commonwealth." *Dechert I,* 922 A.2d at 90 (emphasis original). The court further noted that a 1997 statement of policy of the Department of Revenue, which is still in effect, provides that the sale at retail or use of canned software is subject to sales and use tax. *Id.* (citing 61 Pa.Code § 60.19). Finally, the Commonwealth Court noted that, in *Graham Packaging Co., LP v. Commonwealth,* 882 A.2d 1076 (Pa.Cmwlth.2005), it had addressed the same issue raised by Dechert and determined that "the sale of all canned software, whether transmitted electronically or on a physical medium, is taxable as the sale of tangible personal property," and, therefore, that licenses to use canned software also were properly taxed. *Dechert I,* 922 A.2d at 91 (quoting *Graham Packaging,* 882 A.2d at 1087).

Thereafter, Dechert filed exceptions to the Commonwealth Court's opinion and order. In denying Dechert's exceptions, the Commonwealth Court, *en banc,* reiterated its prior conclusion that, under the plain language of Section 7201(k)(1), a license to use tangible personal property is subject to taxation. The court further opined: "Dechert continues to confuse the corporeal software program with the intangible right to use and copy the software. The object of the transaction is the computer program, not the license. Absent the program, the license is useless." *Dechert LLP v. Commonwealth,* 942 A.2d 210, 212 (Pa.Cmwlth.2008) ("*Dechert II* "). The *en banc* court also rejected Dechert's argument that the court had erred in *Graham Packaging* by relying on a Louisiana case, *South Central Bell Telephone Co. v. Barthelemy,* 643 So.2d 1240 (La.1994), in construing the definition of tangible personal

property, explaining that it had relied on *South Central Bell*, not for the definition of tangible personal property, but simply for "elucidation on the nature of software." *See Dechert II*, 942 A.2d at 212. Dechert filed an appeal as of right with this Court.

## II. Arguments

On appeal, Dechert argues that, because Section 7202(a) of the Code imposes sales tax on the sale at retail of *tangible personal property*, and the definition of tangible personal property does not expressly include software licenses of any type, the amount Dechert paid for licenses to use software is not taxable. In support of its argument, Dechert offers that software programs generally are copyrighted, and that the typical licensing agreement contemplates that the software developer retains ownership of each individual copy of the software program, including single copies delivered to the user. Appellant's Brief at 13. Thus, Dechert asserts a licensee like itself "acquires the right to use patented processes embodied in the software that it otherwise would be prohibited from using," and the tangible media by which the software is conveyed, e.g., a compact disk, is of no value in and of itself, and gives the purchaser no right to copy, install, or use the "copyrighted materials and patented ideas that comprise the software program." *Id.* at 14. Indeed, Dechert points out that tangible media often is unnecessary, since software programs can be downloaded electronically. *Id.* According to Dechert, "consideration paid for a license to use canned computer software is consideration paid for intangible intellectual property rights, that is, the right to use those instructions, not consideration paid for the transfer of tangible personal property." *Id.* at 15.

The Commonwealth, in contrast, contends the Code clearly specifies that licenses to use tangible personal property are taxable, and that Dechert essentially ignores this fact. The Commonwealth further submits that the Commonwealth Court properly determined that canned computer software is tangible personal property, and that any perceived inconsis-

tency between tax treatment of custom software and canned software is justified.

## III. Analysis

 The issue presented in the instant case is whether canned computer software constitutes tangible personal property under the definition set forth in Section 7201(m) of the Code, and, therefore, is subject to sales tax under Section 7202(a), which imposes sales tax on transfers of tangible personal property. This is an issue of statutory construction, which is a pure question of law; accordingly, our standard of review is de novo, and our scope of review is plenary. *Commonwealth v. Bortz*, 589 Pa. 431, 434, 909 A.2d 1221, 1223 (2006). In accordance with the Statutory Construction Act, 1 Pa.C.S.A. §§ 1501 *et seq.*, our goal in interpreting a statute is to ascertain and effectuate the intent of the legislature. *See* 1 Pa.C.S.A. § 1921(a). Generally, the best indication of the General Assembly's intent is the plain language of the statute. *Martin v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 588 Pa. 429, 438, 905 A.2d 438, 443 (2006). When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(b). When, however, the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering a number of specific factors, as discussed more fully below. 1 Pa.C.S.A. § 1921(c).

 With these principles in mind, to determine whether licenses to use canned computer software constitute tangible personal property under Section 7201(m) of the Code and, thus, are subject to sales tax, we first look to the relevant statute. As noted above, Section 7202(a) provides for the imposition "upon each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth a tax of six per cent of the purchase price." 72 P.S. § 7202(a). "Sale at retail" is defined, *inter alia*, as "[a]ny transfer, for a consideration, of the ownership, custody or possession of tangible personal property, *including the grant*

*of any license to use or consume* whether such transfer be absolute or conditional and by whatsoever means the same shall have been effected." 72 P.S. § 7201(k)(1) (emphasis added). Thus, the clear and unambiguous language of the statute provides that a license to use or consume tangible personal property is subject to sales tax. As it is undisputed Dechert purchased licenses to use canned software, the question, therefore, becomes whether canned computer software constitutes tangible personal property.

"Tangible personal property" is defined in the Code as:

Corporeal personal property including, but not limited to, goods, wares, merchandise, steam and natural and manufactured and bottled gas for non-residential use, electricity for non-residential use, prepaid telecommunications, premium cable or premium video programming service, spirituous or vinous liquor and malt or brewed beverages and soft drinks, interstate telecommunications service originating or terminating in the Commonwealth and charged to a service address in this Commonwealth, [and] intrastate telecommunications service [with certain exceptions].

72 P.S. § 7201(m).[5]

The term "corporeal" is not defined in the Code; however, it is defined in Black's Law Dictionary as "[h]aving a physical, material existence; tangible." Black's Law Dictionary 368 (8th ed. 2004). Similarly, "corporeal property" is defined as "[p]roperty that can be perceived, as opposed to incorporeal property." *Id.* at 1253. Although Section 7201(m) provides several examples of corporeal personal property, canned com-

---

5. In portions of its brief, Dechert argues that the legislature's failure to include software *licenses* in its definition of tangible personal property indicates that licenses to use canned computer software are not intended to be taxed. *See, e.g.,* Appellant's Brief at 20–21, 25. As noted by the Commonwealth Court, however, the determinative issue is whether the *object* of the license—canned computer software—is tangible personal property, as Section 7201(k)(1) is clear that a license to use tangible personal property is subject to tax. *See* 72 P.S. §§ 7201(k)(1), 7202(a). Thus, to the extent Dechert relies on or references the legislature's failure to include *licenses* to use canned computer software in the definition of tangible personal property, we reject Dechert's arguments, and confine our analysis to whether canned computer software constitutes tangible personal property.

puter software is not contained in the list of examples. Dechert contends that the legislature's failure to specifically include canned computer software in the definition of tangible personal property, despite including other quasi-physical items such as electricity and cable service, suggests that the legislature did not intend for canned computer software to be taxed. Appellant's Brief at 24–25. At the very least, Dechert argues that the statute is ambiguous and should be construed in its favor. *See* 1 Pa.C.S.A. § 1928(b)(3) (a statute imposing a tax must be strictly construed); *Pennsylvania Power & Light Co. v. Commonwealth*, 553 Pa. 1, 7, 717 A.2d 504, 507 (1998) (any doubt or uncertainty as to the imposition of the tax must be resolved in favor of the taxpayer).

Initially, we note our disagreement with Dechert's position that the legislature's failure specifically to include canned computer software in the definition of tangible personal property, or, more precisely, as an example of corporeal personal property, evidences the legislature's clear intent to *exclude* canned computer software from the definition. Indeed, this Court previously rejected a similar argument. In *Pa. Human Relations Comm'n v. Alto–Reste Park Cemetery Ass'n*, 453 Pa. 124, 306 A.2d 881 (1973), the appellee cemetery argued that, because nonsectarian cemeteries were not specifically mentioned in the definition of "place of public accommodation," as set forth in the version of the Pennsylvania Human Relations Act in effect at that time, the legislature did not intend for nonsectarian cemeteries to be considered places of public accommodation subject to the jurisdiction of the Pennsylvania Human Relations Commission. In rejecting the cemetery's argument, this Court held that the language of the statute, which defined "place of public accommodation" as "any place which is open to, accepts or solicits the patronage of the general public, including but not limited to [approximately 50 enumerated places of accommodation] but shall not include any accommodations which are in their nature distinctly private," was "broad and all inclusive." 453 Pa. at 130–31, 306 A.2d at 886. We further noted that "[t]he verb 'include' has not been defined so as to give it such a restrictive

meaning." *Id.* at 132, 306 A.2d at 886 (citation omitted). Rather, we explained that the term "include" is "to be dealt with as a word of 'enlargement and not limitation,'" noting this was "especially true" when followed by the phrase "but not limited to." *Id.* at 130–31, 306 A.2d at 885; *see also Commonwealth v. Conklin*, 587 Pa. 140, 156 n. 16, 897 A.2d 1168, 1176 n. 16 (2006) (noting that, in the psychology practice act, exceptions set forth following the language "including but not limited to" are illustrative and not exhaustive). Similarly, in *Aldine Apartments, Inc. v. Commonwealth*, 39 Pa.Cmwlth. 204, 395 A.2d 299 (1978), the Commonwealth Court rejected the petitioner's argument that language contained in Section 7201(m) of the 1971 version of the Code, which explicitly included gas and electricity for non-residential use in the definition of tangible personal property, implicitly excluded all gas and electricity for residential use from the definition. The Commonwealth Court concluded that the language "including, but not limited to" was "a clear indication that the Legislature intended to exclude nothing, implicitly or otherwise, by the language which follows those words." *Id.* at 302. Based upon the above-cited case law, we find the introductory verbiage "including, but not limited to," generally reflects the intent of the legislature to broaden the reach of a statute, rather than a purpose to limit the scope of the law to those matters enumerated therein. Accordingly, we reject Dechert's position that the legislature's failure to specifically include canned computer software in the definition of tangible personal property, despite having included a list of other examples, compels a conclusion that canned computer software does not constitute tangible personal property.

We also disagree with Dechert's suggestion that, because the legislature did not specifically include canned computer software in its definition of tangible personal property under Section 7201(m), the statute must be viewed as ambiguous, and, therefore construed in its favor. We addressed a similar argument in *Gustine Uniontown Assocs. Ltd. v. Anthony Crane Rental, Inc.*, 577 Pa. 14, 842 A.2d 334 (2004). There, the owner of a shopping mall filed a complaint against multiple

defendants for breach of contract, fraudulent misrepresentation, and professional negligence in connection with alleged latent construction defects. The trial court dismissed the claims against the contractor as time-barred under the four-year statute of limitations period applicable to actions "upon a contract, obligation or liability founded upon a writing." 42 Pa.C.S.A. § 5525(a)(8). The Superior Court reversed, finding the construction contract claims were subject to the "catch-all" six-year statute of limitations period under 42 Pa.C.S.A. § 5527.

In reversing the Superior Court's decision regarding the appellant's construction contract claims, this Court found the language of Section 5528(a)(8) to be unambiguous. Rejecting the appellant's suggestion that Section 5528(a)(8) was ambiguous with respect to real estate construction contracts, we explained:

> The fact that Section 5525(a)(8) does not explicitly mention contracts for the sale or construction of real property—a point deemed important by the panel below ... —does not render the statute ambiguous or inapplicable. The General Assembly was not obliged to enumerate all possible actions upon written contracts that would be subject to the amended provision. Instead, the Assembly spoke in broad terms—just as it had in the prior version of the statute which provided a six-year period of limitations for contract actions—while leaving the door open for specific statutory exceptions. When no such exception exists, the general rule controls. There is nothing ambiguous in such a construct.

577 Pa. at 35, 842 A.2d at 347–48 (citing *Commonwealth, Dep't of Transp. v. Taylor*, 576 Pa. 622, 841 A.2d 108, 112 (2004) (construing statutory privilege set forth in 75 Pa.C.S.A. § 3754(b) in context of criminal case; "the fact that the statute does not 'explicitly state' that it applies to criminal cases does not clothe the statute in ambiguity. The statute speaks in the broadest of terms ...; such global language obviously encompasses criminal proceedings no less than civil proceedings. There is no ambiguity.")). Accordingly, the fact that the General Assembly did not specifically list canned

computer software in its definition of tangible personal property in Section 7201(m) does not automatically render the statute ambiguous.

Having dispensed with these initial contentions, the relevant inquiry remains whether canned computer software constitutes tangible personal property under Section 7202. While this Court has not yet answered this question, the Commonwealth Court, in addressing the question in this case, relied on its decision in *Graham Packaging,* as noted above. There, the petitioner sought review of an order of the Board of Finance and Revenue denying its request for a refund of sales tax it paid in connection with the renewal of various canned computer software licenses. The petitioner maintained that the renewal fees for licenses for canned computer software were not taxable "because the 1997 Amendments to the Code constituted a comprehensive repeal of the tax on computer programming services," which, the petitioner argued, included canned computer software. 882 A.2d at 1081.

In addressing the petitioner's arguments, the Commonwealth Court first considered how to define the terms "tangible" and "corporeal" within the meaning of Section 7201(m), examining various analytical frameworks employed by other jurisdictions, including the approach taken by the Louisiana Supreme Court in *South Central Bell, supra.*[6] Rejecting a

6. In *South Central Bell,* the Louisiana Supreme Court determined that switching system computer software and data processing computer software were tangible property and thus subject to sales tax under a city code:

[t]he software at issue is not merely knowledge, but rather is knowledge recorded in a physical form which has physical existence, takes up·space on the tape, disc, or hard drive, makes physical things happen, and can be perceived by the senses.... That we use a read/write head to read the magnetic or unmagnetic spaces is no different than any other machine that humans use to perceive those corporeal things which our naked senses cannot perceive.

The software itself, i.e. the physical copy, is not merely a right or an idea to be comprehended by the understanding. The purchaser of computer software neither desires nor receives mere knowledge, but rather receives a certain arrangement of matter that will make his or her computer perform a desired function. This arrangement of matter, physically recorded on some tangible medium, constitutes a corporeal body.

strict adherence to the traditional notion of the terms "tangible" and "corporeal" which would require that, in order for a transfer of software to be considered tangible personal property, some physical matter must be involved in the sale, the court instead embraced the "essence of the transaction" test, also referred to as the "true object" test, to be applied when a transaction appears to involve both tangible and intangible property or tangible property and a service:

> In order to determine whether a taxable sale of tangible personal property has occurred, the test focuses on whether the essence or true object of the sale is tangible personal property or intangible property or a service with tangible property serving only as the medium of transmission. If the essence of the transaction or true object of the transaction is the intangible property or service, the intangible object/service does not assume the taxable character of the tangible property serving as the medium of transfer.

*Id.* at 1083. The court concluded that this test:

> does not exalt form over substance; it results in the uniform tax treatment of all canned software; and it avoids the potential for parties to structure their transactions to avoid tax liability. Finally, it does not leave in limbo the nature of a license ... to use software originally transmitted on a disk, but later substantially altered by electronically downloaded upgrades. In sum, we conclude that it is the nature of the software itself, not the package in which it comes, which must determine whether the software and accompanying license is tangible personal property.

*Id.* at 1086.

The *Graham Packaging* court acknowledged that determining the nature of software poses a "difficult question;" nonetheless, based on the list of items included as examples of corporeal personal property under the definition of tangible

---

643 So.2d at 1246. In so holding, the court distinguished between the right to use software (a copyright), which is incorporeal, and a physical copy of the software, which is corporeal. *Id.* at 1248–49. The court declined, however, to adopt a distinction between canned and custom software. *Id.* at 1249.

personal property, such as electricity, cable, video programming, and telecommunications services, the court concluded that the legislature did not intend to limit the taxable subject to "only those items of physical matter that one can see with the naked eye and hold in one's hand." *Id.* The court opined:

> a purchaser of canned computer software is acquiring more than incorporeal knowledge of an intangible right; rather, the purchaser is acquiring an electronic copy of a computer program that is stored on a computer's hardware, takes up space on the hard drive and can be physically perceived by checking the computer's files. It remains in the computer and operates the program each time it is used.

*Id.* at 1086–87. The *Graham Packaging* court's decision is helpful in understanding the nature of computer software, and provides a persuasive analysis to support a conclusion that canned computer software constitutes tangible personal property; we do not, however, find it necessary to adopt the essence of the transaction test, or any other similar test, in order to resolve the issue presently before this Court.[7]

 As discussed above, we reject Dechert's argument that the legislature's failure to specifically include canned computer software in the definition of tangible personal property *automatically* renders the statute ambiguous. However, with regard to the issue of whether canned computer software constitutes tangible personal property, the statute, which in-

---

**7.** Dechert alleges that the *Graham Packaging* decision was erroneous for several reasons, and, therefore, should be rejected. First, Dechert argues that the court improperly relied on Louisiana law, specifically, *South Central Bell, supra,* to determine that canned software license renewals were tangible personal property. Dechert additionally contends that the decision in *Graham Packaging* is illogical because, while it explicitly "recognizes that custom software is not subject to tax," it nevertheless adopts a test—the essence of the transaction test—under which custom software *would* be taxable as tangible personal property, in that "custom software is identical to canned software in all material respects," and the "only material difference is that custom software is designed for one user, whereas canned software is more readily available." Appellant's Brief at 22. As we find it unnecessary to rely on the essence of the transaction test adopted by the court in *Graham Packaging* to determine whether canned computer software constitutes tangible personal property, Dechert's challenges to *Graham Packaging* do not warrant further discussion.

cludes a varied and distinct list of items, admittedly, is not clear. For example, while Section 7201(m) defines "tangible personal property" as "corporeal personal property, including but not limited to" various enumerated items, these items include what are commonly considered both corporeal and non-corporeal items. Thus, further construction is required.[8]

Pursuant to the Statutory Construction Act,

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

**8.** Our conclusion at this stage of our analysis that the statute is unclear does not warrant judgment in favor of the taxpayer. While, under 1 Pa.C.S.A. § 1928(b), the provisions of statutes of certain classes, including, *inter alia,* provisions imposing taxes, are to be strictly construed, that rule of strict construction does not preclude consideration of the legislature's intent. As we explained in *Commonwealth v. Fithian,* 599 Pa. 180, 961 A.2d 66 (2008), "the need for strict construction does not require that the words of a penal statute be given their narrowest meaning or that legislative intent should be disregarded." *Id.* at 194, 961 A.2d at 74; *see also Commonwealth v. Gordon,* 511 Pa. 481, 487, 515 A.2d 558, 561 (1986) (strict construction does not require that the words of a criminal statute be given their narrowest meaning or that the Legislature's evident intent be disregarded) (citing *Commonwealth v. Duncan,* 456 Pa. 495, 321 A.2d 917 (1974)); *Klein v. Allegheny County Health Dep't,* 441 Pa. 1, 8, 269 A.2d 647, 651 (1970) (strict construction of Rent Withholding Act did not require the statute to be construed as narrowly as possible, or so literally and without common sense that its obvious intent is frustrated). Indeed, with regard to tax statutes such as the one at issue in the case sub judice, if we were to construe the words of such statutes in their narrowest terms, without regard to an assessment of the legislature's intent, we would render the "including, but not limited to" language of such statutes meaningless, resulting in an automatic judgment in favor of the taxpayer any time a taxpayer challenged the tax on an item that is not specifically identified in the statute. Accordingly, while "any doubt or uncertainty as to the imposition of [a] tax must be resolved in favor of the taxpayer," *Pennsylvania Power & Light Co., v. Com., Bd. of Finance and Revenue,* 553 Pa. 1, 7, 717 A.2d 504, 507 (1998), such doubt is only implicated after our efforts at statutory interpretation yield no definitive conclusion.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921(b) and (c); *cf. McClellan v. Health Maint. Org. of Pa.*, 546 Pa. 463, 686 A.2d 801 (1996) (plurality) (where "including, but not limited to" language in Peer Review Protection Act, 63 P.S. § 425.1 et seq., could be read either to include or exclude certain types of health maintenance organizations, and this Court was required to ascertain the intent of the legislature).

In the instant case, an examination of the statutory factors set forth in 1 Pa.C.S.A. § 1921(c)—particularly, the former statute, and the legislative and administrative interpretations of the statute—supports the conclusion that the legislature intended for canned computer software to be taxed as tangible personal property under Section 7202(a). Specifically, prior to 1997, Section 7201 of the Code defined "sale at retail" as, *inter alia,* "the rendition for a consideration of computer programming services." 72 P.S. § 7201(k)(16) (repealed by the Act of May 7, 1997, P.L. 85 (hereinafter "1997 Amendments")). The definition of "computer programming services" included, *inter alia,* custom software programming and custom computer programs, but not canned computer programs. When the legislature repealed Section 7201(k)(16), it necessarily eliminated the tax on custom software programming and custom computer programs; however, the same cannot be said for canned computer programs, since canned computer programs were never included in the definition of computer programming services.

Moreover, as the *Graham Packaging* court discussed, the Department itself subsequently clarified the tax treatment of

the sale of canned software in a statement of policy[9] issued following the 1997 Amendments:

> Effective July 1, 1997, the rendition of computer programming, computer integrated systems design, computer processing, data preparation or processing, information retrieval, computer facilities management and other computer-related services, as defined under repealed section 202(dd)—(ii) ... are no longer subject to Sales or Use Tax. *The sale at retail or use of computer hardware and canned software, as well as services thereto, remains subject to Sales and Use Tax as the sale at retail or use of tangible personal property and is not affected by the repeal of Section 201(dd)—(ii) of the [Code].*

61 Pa.Code § 60.19 (emphasis added). With the use of the term "remains" the Department thus expressed its position that, even prior to the 1997 Amendments, a sale at retail of canned software was subject to sales and use tax as tangible personal property.[10]

**9.** The Commonwealth Court acknowledged that a statement of policy need not be promulgated in accordance with the notice and comment procedures of the Commonwealth Documents Law, and thus does not have "the force of law." *Graham Packaging*, 882 A.2d at 1079 n. 5 (citing *Professional Ins. Agents Ass'n v. Koken*, 777 A.2d 1179 (Pa. Cmwlth.2001)).

**10.** The Commonwealth Court in *Graham Packaging* noted that, in February 2000, the Department issued a revenue ruling that:

> appears to be somewhat inconsistent with its statement of policy appearing at 61 Pa.Code § 60.19, in that it indicates that the purchase of canned software that is transmitted electronically is not subject to tax while the purchase of the same software, recorded and delivered on tangible media, is subject to tax because it has a physical material body. The revenue ruling further provides that "charges for canned software updates that are part of a maintenance contract, and that are delivered electronically, are also not subject to tax."

*Graham Packaging*, 882 A.2d at 1080 (citing Sales and Use Tax Ruling, No. SUT–99–024 (Feb. 2, 2000)). The *Graham Packaging* court noted that, although the ruling "appears no longer to be in effect," the Department maintained the position espoused in the ruling in *Graham Packaging*. *See generally* http://www.revenue.state.pa.us.revenue (the publication of letter rulings is intended to provide interpretive guidance to the general public and does not bind the department to any entity other than to the original taxpayer, statutory or regulatory changes, judicial decisions, or different facts may modify or negate a letter ruling; otherwise, a letter ruling is valid for five years). We note that

For the reasons set forth above, we conclude that, while the statutory language is unclear, it is apparent that the legislature intended that canned computer software be subject to sales tax under Section 7202(a).

Moreover, when construing statutory language, it is this Court's practice to afford substantial deference to the interpretation rendered by the agency charged with its administration. *See Rendell v. Pennsylvania State Ethics Comm'n*, 603 Pa. 292, 983 A.2d 708 (2009). As discussed above, the Department has interpreted the definition of tangible personal property under Section 7201(m) as including canned computer software, and we find no basis not to defer to the Department's interpretation.

## IV. Conclusion

Accordingly, for the foregoing reasons, we hold that canned computer software constitutes tangible personal property subject to sales tax under Section 7202(a), and we affirm the decision of the Commonwealth Court.

Former Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE and Justices BAER and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice EAKIN files a dissenting opinion.

Justice SAYLOR, concurring.

The majority finds the Code's definition of tangible personal property to be ambiguous to the degree to which canned computer software is intended to be included, but dismisses Taxpayer's argument that it is entitled to the benefit of the

an existing ruling on the Department's website, SUT–08–005, provides "[h]ardware and canned or prewritten software (including licenses) are subject to sales or use tax as tangible personal property, regardless of delivery method." *See* SUT–08–005 (Feb. 11, 2008) (citing 61 Pa.Code § 60.19(c)(2)(i)).

doubt via a *reductio ad absurdum* rationale. *See* Majority Opinion, *op.* at 348 n.8, 998 A.2d at 584 n.8. This logic, however, fails to account for the possibility of affording a taxpayer the benefit of the doubt short of courting the absurd.

In my view, to the degree the Legislature intended to capture intellectual work product conveyed or housed in non-fixed media, the Code would benefit from a more conceptual explanation of such intention in the statutory text. As it is, the Code's definition of tangible personal property is prolix, non-cohesive, and, at times, counterintuitive. In such circumstances, I am sympathetic to Taxpayer's position that a broad-sweeping *ejusdem generis* approach to the catch-all language—based on the enumeration of non-similar "tangibles" such as steam and telecommunications service-is unmanageable and inappropriate.

Nevertheless, I support the majority's consideration of the Code's history to provide some guidance. To me, the Legislature's previous effort to specifically capture computer programming services and custom software programming strongly suggests that the Assembly believed that canned programs already were amenable to the tax. Such a belief seems reasonable, particularly as the most common conveyance of canned programming was in fixed media.

I also agree with the majority that the Department's interpretation is entitled to substantial deference. *See* Majority Opinion, *op.* at 351, 998 A.2d at 586. However, I note the presence of competing principles of construction in my own analysis, since I also believe that Taxpayer's arguments are strengthened in light of the definitional ambiguity. To my mind, this is a very close case.

Justice EAKIN, dissenting.

Because I do not agree with the majority's characterization of a license to use canned software programs as tangible personal property, I must dissent.

The debate on whether licensed software is considered tangible property is ongoing and has resulted in views as

divergent as the technological variations addressed. Alas, the debate also tends to reflect a generational lack of understanding of that technology by courts and legislatures; however, we must answer the present question based on what the legislature said, not what we think the legislature meant to say. When the law is clear, the legislature's intent is not relevant.

Some jurisdictions hold such software is taxable when the tape or disc on which it is delivered is an essential part of the program; the tangible container makes the product taxable. *See Comptroller of the Treasury v. Equitable Trust Co.,* 296 Md. 459, 464 A.2d 248, 260–61 (1983) (noting loading of software program from tape into computer does not sever program from its container; once loading occurs, program exists both on tape and in computer). These jurisdictions reject the "essence of the transaction" test, focusing instead on the fact the program is delivered via a tangible container. *See Chittenden Trust Co. v. King,* 143 Vt. 271, 465 A.2d 1100, 1102 (1983) (comparing canned software to films, videotapes, books, cassettes, and records, where container and its content are inseparable).

Other jurisdictions have adopted the "essence of the transaction" test, holding the "essence" of purchasing software is the "software itself, not the tangible medium on which the software might be stored." *Dallas Cent. Appraisal Dist. v. Tech Data Corp.,* 930 S.W.2d 119, 123 (Tex.Ct.App.1996). *See also Northeast Datacom, Inc. v. City of Wallingford,* 212 Conn. 639, 563 A.2d 688, 691 (1989) (tapes or discs used to contain software were only most tangential incidents of computer program); *CompuServe, Inc. v. Lindley,* 41 Ohio App.3d 260, 535 N.E.2d 360, 365 (1987) (holding purpose of purchasing software is to obtain computer information which consists of electronic impulses transmitted into computer's memory, not tangible disc used to transfer such impulses). Some of these jurisdictions have observed that, unlike movies, compact discs, and books, the information on a disc containing a software program is separable from the disc; the information is the substance of the transaction, and may be transferred by means other than the disc. *See First National Bank of*

*Springfield v. Department of Revenue,* 85 Ill.2d 84, 51 Ill.Dec. 667, 421 N.E.2d 175, 178 (1981) (purchaser is buying information itself, not tangible property transferring such information).

*South Central Bell Telephone Co. v. Barthelemy,* 643 So.2d 1240 (La.1994), is the sole decision in which a court has applied the "essence of the transaction" test to canned software and found it to be tangible property. *Graham Packaging Co., LP v. Commonwealth,* 882 A.2d 1076 (Pa.Cmwlth. 2005), on which the majority relies, adopted *South Central Bell's* observation that "[t]he software . . . is knowledge recorded in a physical form which has physical existence, takes up space on the tape, disc, or hard drive, makes physical things happen, and can be perceived by the senses." *South Central Bell,* at 1246; *cf. Graham Packaging,* at 1086–87 (canned computer software is "an electronic copy of a computer program that is stored on a computer's hardware, takes up space on the hard drive and can be physically perceived by checking the computer's files.").

I agree with the *Graham Packaging* court that the "essence of the transaction test is the most logical and practical[,]" as "it is the nature of the software itself [and] not the packaging in which it comes in" which is the pertinent inquiry for purposes of taxing tangible property, *id.,* at 1086. However, I do not agree with its conclusion that the software at issue here is tangible—it is not "stored" on the computer.

Although the purchaser of canned software obtains the right to use the copy of the software, this is not a physical thing. It is a set of instructions to the computer in the form of binary pulses configured in the computer's memory; as such, they do not "take up space" as *Graham Packaging* suggests, but instead simply reorder the configuration of electrons *already on the computer.* The informational reorganization dictates specific functions for the computer to perform. *See First National Bank of Springfield,* 51 Ill.Dec. 667, 421 N.E.2d at 176 (distinguishing between operation programs, which control hardware and make computer operate, and thus are part of machine, from application programs, which only perform spe-

cific functions once information is received by computer). The "fact that tangible property is used to store or transmit the software's binary instructions does not change the character of what is fundamentally a classic form of intellectual property." *Northeast Datacom Inc.*, at 691.

Many, including myself, have labored over the conceptual problem: the very nature of the software itself. If one thinks of "adding" a program to a computer, one thinks of putting some additional physical thing on it, even if it is microscopic electronic code. However, this too often is our mistake. Licensed preprogrammed software does not add a thing to a computer—the software merely rearranges what is already there. It does not, as many jurists have incorrectly stated, "take up space on the hard drive." Those electrons the software reorganized do exist there, but they *already* existed—they have just been reconfigured without addition. The way the computer operates has been changed, but it has not been given any additional electrons—its existing dormant electrons have been given a new purpose.

It is much like golf. New clubs are tangible—they may or may not change one's ability to put the ball in the hole, but they are tangible additions. However, a golf *lesson* is not. The things that enable the swing have always been there, and the lesson (hopefully) improves the swing—the preexisting muscles simply initiate a modified series of actions consistent with the golf pro's instruction. Nothing tangible has been added to the golfer. Computers, which follow instructions better than the average golfer, accept the new directions from the software without exception, but that does not transform the instructions themselves into tangible personal property.

Like the aftermath of having one's company listen to a motivational speaker, the results may be tangible, but the lessons themselves are not. Accordingly, I would conclude a license to reconfigure one's existing computer electrons via canned software does not involve tangible property, and is thus not subject to sales tax pursuant to 72 P.S. § 7202(a); accordingly, I would reverse the Commonwealth Court.